## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                Plaintiff,

    v.

GREEN LANTERN INN, INC., et al.,

                Defendants.

REPORT AND RECOMMENDATION
19-CV-06704-FPG-MJP

## INTRODUCTION

**Pedersen, M.J.** Before the undersigned is plaintiff EEOC's ("EEOC") motion for partial summary judgment. (ECF No. 91–1.) Defendants opposed EEOC's motion. (Defs.' Mem. of Law, ECF No. 106–14.) EEOC filed a reply. (ECF No. 117.) For the reasons stated below, the undersigned reports and recommends that EEOC's motion for partial summary judgment be granted.

EEOC asserts that, under the applicable factors found in *Cook v. Arrowsmith Shelburne, Inc.*[1] (the "*Cook* factors") and the undisputed material facts, the undersigned should find that Green Lantern Inn, Inc. d/b/a Mr. Dominic's on Main and Pullman Associates, LLC d/b/a Mr. Dominic's at the Lake[2] are "a single employer for the purposes of Title VII." (Pl.'s Mem. of Law at 1, ECF No. 91-1.) Defendants argue that the undersigned should not recommend that the Honorable Frank P.

---

[1] 69 F.3d 1235 (2d Cir. 1995).

[2] The undersigned will refer to these businesses as "Green Lantern Inn" and "Pullman Associates."

Geraci "pierce the corporate veil and treat the two separate entities as one as a matter of law."[3] (Defs.' Mem. of Law at 1, ECF No. 106–14.) Before discussing the single employer issue further, the undersigned will recount the procedural history and the parties' dueling Loc. R. Civ. P. 56 ("Local Rule") statements.

---

[3] Notably, "the single-employer inquiry is conceptually distinct from other theories of corporate veil-piercing . . . . [U]nder the single-employer test, a plaintiff need not demonstrate unlawful motive or any intent to use the corporate form to avoid contractual obligations." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 156 (2d Cir. 2014) (internal citations omitted).

## Table of Contents

INTRODUCTION ............................................................................................. 1

Procedural history ........................................................................................... 5

Statement of Facts .......................................................................................... 6

Introduction and Discussion .......................................................................... 6

The EEOC's Statement of Facts ..................................................................... 7

Business Owner John Tachin ......................................................................... 7

Defendant Green Lantern Inn ........................................................................ 8

Mr. Tachin's Other Corporate Entities ........................................................ 10

Mr. Tachin's Operations Oversight ............................................................. 14

Office Manager Patricia Warren .................................................................. 17

General Manager Anthony Barbone ............................................................. 22

Rachel Clifford ............................................................................................. 23

Jenna Kavanagh ........................................................................................... 24

Chef Paul Dowlatt ........................................................................................ 25

Abby Bardanis .............................................................................................. 27

Alissa Bean .................................................................................................. 28

Jacklyn Casciola (neé Cavuoto) .................................................................. 29

Melissa Connors ........................................................................................... 33

The Response to Ms. Clifford's Sex Harassment Complaint ....................... 34

Ms. Clifford's EEOC Charge ...................................................................... 40

The Employee Manual .................................................................................. 40

Personnel Forms ........................................................................................... 42

Payroll Practices ........................................................................................... 44

Website and Facebook Accounts .................................................................. 45

Charles A. Terviso, CPA .............................................................................. 46

USA Payroll .................................................................................................. 47

Point-of-Sale Systems .................................................................................. 48

The Complaint in this Action ....................................................................... 48

Arnold Petralia, Esq. .................................................................................... 49

EEOC's Response to Defendant's Additional Material Facts ...................... 50

Defendants' Management .............................................................................. 53

Defendants' Employee Rosters ..................................................................... 56

The Complainants Only Worked for Green Lantern ............................................... 67

Separate Payroll Records .......................................................... 69

Separate Tax Returns and Financial Records ...................................... 70

Standard of Law .......................................................................... 72

Discussion ............................................................................... 73

Conclusion ............................................................................... 77

## PROCEDURAL HISTORY

In a text order dated June 10, 2021, the Honorable Frank P. Geraci referred to the undersigned the motions discussed below. (Text Order, ECF No. 92.) The undersigned will assume the parties' familiarity with the procedural history detailed in the undersigned's earlier amended report and recommendation. (R. & R. at 2–5, ECF No. 114.) In that R. & R., the undersigned granted the following motions: EEOC's motion to strike affirmative defenses (ECF No. 84), EEOC's motion to strike impertinent material and scandalous allegations (*id.*), EEOC's motion to strike legal arguments and conclusions from the Defendants' answer (*id.*), EEOC's motion for expenses (ECF No. 83), and EEOC's motion for sanctions (ECF No. 90). The undersigned also reported and recommended that Judge Geraci dismiss Defendants' counterclaims (ECF No. 85), and moot Defendants' motion to dismiss for lack of jurisdiction (ECF No. 42), because Defendants were not responding to the operative second amended complaint. (R. & R. at 25, ECF No. 114.) Judge Geraci adopted the R. & R. in its entirety. (Decision and Order at 2, ECF No. 119.)

Still pending for the undersigned's report and recommendation is EEOC's motion for partial summary judgment filed on June 1, 2021. (ECF No. 91.) Before filing opposition to the motion for partial summary judgment (ECF No. 106-14), Defendants obtained new counsel. (Notices of Appearance, ECF Nos. 96–97.) Between Defendants' filing of their opposition and Plaintiff's reply, the undersigned sent the parties a letter dated August 19, 2021. (Letter, on file with the undersigned.) In that letter, the undersigned addressed a different R. & R. docketed on August 18, 2021,

(ECF No. 112),[4] that overlooked the fact that "the motion for partial summary judgment (ECF No. 91) had not been fully briefed." (*Id.*) Accordingly, the undersigned issued the amended R. & R. referenced above "to reflect that the pending motion for summary judgment [would] be dealt with by separate order of the Court." (*Id.*) EEOC filed its reply on August 20, 2021. (ECF No. 117.) The undersigned notes that a decision concerning EEOC's proposed bill of costs (ECF No. 118), is still outstanding. (ECF No. 127.) Finally, the undersigned held oral argument on this motion on February 28, 2022. (ECF No. 129.) Counsel for both parties appeared for oral argument. (*Id.*)

## STATEMENT OF FACTS

### *Introduction and Discussion*

Based on the parties' submissions, the undersigned will recite the undisputed facts for the purposes of the partial summary judgment motion, noting and resolving any disputes. Before addressing the dueling statements of fact, the undersigned notes that the parties have circumvented the purpose of Local Rule 56. The purpose "is to streamline the consideration of summary judgment motions." *NOSAW v. Acquest Wehrle, LLC*, No. 07-CV-297-JTC, 2008 WL 5243926, at *4 (W.D.N.Y. Dec. 16, 2008) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009)).[5] Instead of

---

[4] To avoid confusion, the Court previously directed that the attachment for ECF No. 112 be removed as it was filed prematurely.

[5] Although *Holtz* discussed Local Rule 56.1 of the Southern and Eastern Districts, *see* 258 F.3d at 72, the Western District noted that this language is "substantially similar" to that of the Western District's Local Rule 56. *NOSAW*, 2008 WL 5243926, at *4.

simplifying the identification of any material facts that would preclude summary judgment, the parties' statements muddied the waters.

Thus, where the parties' Local Rule 56 statements, and objections thereto, fail to meet the requirements of Local Rule 56, the undersigned will recommend that they be disregarded. First, the undersigned will recommend that "legal argument" and "conclusory statements" be disregarded in the parties' Local Rule 56 statements and objections thereto. *Day Spring Enterprises, Inc. v. LMC Int'l, Inc.*, No. 98-CV-0658A(F), 2004 WL 2191568, at *11 (W.D.N.Y. Sept. 24, 2004) (citing *Holtz*, 258 F.3d at 73). Second, where the parties' Local Rule 56 statements, and objections thereto, "quibble with phraseology" or "speak[] past . . . asserted facts," or are otherwise "immaterial," the undersigned will also recommend that they be disregarded. *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014); *see also Lee v. City of Troy*, 520 F. Supp. 3d 191, 200 (N.D.N.Y. 2021) (disregarding "ancillary" portions of the parties' Local Rule 56 statements). Based on the parties' submissions, the undersigned recites the facts below for the purposes of the summary judgment motion, noting any disputes below.

### The EEOC's Statement of Facts

### Business Owner John Tachin

> 1. John Tachin owns Mr. Dominic's on Main and Mr. Dominic's at the Lake restaurants as a member and/or shareholder of several corporate entities, including Defendants Green Lantern Inn, Inc. and Pullman Associates, LLC. Tachin Dep. 37:18–23, 39:12–16, 44:2–5, 45:18–20, Beckles Decl. Ex. 1.

(EEOC Local Rule 56 Statement of Material Facts in Support of Its Mot. for Partial

Summ. J. ("EEOC SOF"), ¶ 1, ECF No. 91–2.) Defendants partially dispute the

statement, at the same time adding additional details:

> The EEOC mischaracterizes the names and ownership of the
> defendants. Green Lantern, Inc. ("Green Lantern") is a New York
> corporation, and John Tachin originally owned it with his business
> partner Gary Polisseni. Tachin Decl. ¶ 9. Since June 2017, Tachin has
> been the sole officer, director and shareholder of that corporation.
> Tachin Decl. ¶¶ 12–13. Pullman Associates, LLC ("Pullman") is a New
> York limited liability company, formed in 2011 for the purpose of taking
> over the ownership of John Tachin's wife's family business. Tachin Decl.
> ¶ 4. At all times, Tachin has been the sole member of Pullman. Tachin
> Decl. ¶ 6.

(Defs.' W.D.N.Y. Loc. R. Civ. P. 56 Opposing Statement of Disputed Facts ("Defs.'

Resp."), ¶ 1, ECF No. 106–13.) The undersigned finds that Defendants' objection does

not create a material issue of fact.

### Defendant Green Lantern Inn

> 2. Green Lantern Inn, Inc. ("Green Lantern") is a New York corporation
> owned by John Tachin. Tachin Dep. 37:20-23, Beckles Decl. Ex. 1;
> MRD000567, 573, Beckles Decl. Ex. 2; MRD000580, 586, Beckles Decl.
> Ex. 3; MRD000592, 601, Beckles Decl. Ex. 4.

> 3. John Tachin is Green Lantern's sole owner, 100.00% shareholder,
> President and only officer. Tachin Dep. 37:20-23, 39:12-16, Beckles Decl.
> Ex. 1; MRD000567, 573, Beckles Decl. Ex. 2; MRD000580, 586, Beckles
> Decl. Ex. 3; MRD000592, 601, Beckles Decl. Ex. 4.

> 4. Green Lantern's corporate address is 4699 Lake Avenue, Rochester,
> New York 14612.

(EEOC SOF ¶¶ 2–4.) Defendants dispute paragraph four, responding that "Green

Lantern's only business at all times was to operate a restaurant and banquet facility

known as Dominic's on Main located at 1 Church Street East, Fairport, New York,

14450, until the restaurant closed in August 2020. Tachin Decl. ¶ 15." (Defs.' Resp.

¶ 4.) The undersigned finds that Defendants' objection does not create a material issue of fact.

> 5. Since 2014, Green Lantern has operated and conducted business as the restaurant Mr. Dominic's on Main. Tachin Dep. 39:4-11, 42:20-25, Beckles Decl. Ex. 1.

(EEOC SOF ¶ 5.) Defendants respond: "The EEOC mischaracterizes the status of the restaurant operated by Green Lantern, which closed in August 2020. Tachin Decl. ¶ 15." (Defs.' Resp. ¶ 5.) The undersigned finds that Defendants' objection does not create a material issue of fact.

> 6. Mr. Dominic's on Main restaurant was located at the historic Green Lantern Inn, 99 S. Main Street, Fairport, New York 14450. EEOC0000274, Beckles Decl. Ex. 5. The restaurant also used the address 1 East Church Street, Fairport, New York 14450. Barbone 21:13-18, Beckles Decl. Ex. 6; MRD000050, Beckles Decl. Ex. 7.

(EEOC SOF ¶ 6.) Defendants dispute this assertion, stating: "The EEOC partially misstates the Green Lantern restaurant's former address, which was located at 1 Church Street East, Fairport, New York, 14450. Tachin Decl. ¶¶ 11, 15." (Defs.' Resp. ¶ 6.) This issue of whether the Fairport restaurant was on Church Street or Main Street, although undoubtedly important to those using a GPS to find the place, is immaterial on the issue before the undersigned.

> 7. Mr. Dominic's on Main closed on August 7, 2020 and has not reopened. Tachin Dep. 39:4–6, Beckles Decl. Ex. 1; Beckles Decl. Exs. 8, 9.
>
> 8. Pullman Associates, LLC ("Pullman Associates") is a New York limited liability company owned by John Tachin. Tachin Dep. 37:20–23, Beckles Decl. Ex. 1; MRD000616, 622, Beckles Decl. Ex. 10; MRD000631, 637, Beckles Decl. Ex. 11; MRD000652, 656, Beckles Decl. Ex. 12.
>
> 9. John Tachin owns 100% of the membership interests of Pullman Associates, and is Pullman Associates' President and only officer. Tachin

Dep. 37:20-\—23; 44:2–7, 45:18–20, Beckles Decl. Ex. 1; MRD000616, 622, Beckles Decl. Ex. 10; MRD000631, 637, Beckles Decl. Ex. 11; MRD000652, 656, Beckles Decl. Ex. 12.

10.   Pullman Associates operates and conducts business as the restaurant Mr. Dominic's at the Lake, and its principal business activity for New York State tax purposes is "RESTAURANT." Tachin Dep 43:18–25, 46:8–11, Beckles Decl. Ex. 1; MRD000647, Beckles Decl. Ex. 12.

11.   Pullman Associates' corporate address is 4699 Lake Avenue, Rochester, New York 14612, the same location as the restaurant, Mr. Dominic's at the Lake. Tachin Dep. 12:10–15, 47:8–10, Beckles Decl. Ex. 1; MRD000622, Beckles Decl. Ex. 10; MRD000637, Beckles Decl. Ex. 11; MRD000647, Beckles Decl. Ex. 12; Beckles Decl. Ex. 9.

### *Mr. Tachin's Other Corporate Entities*

12. John Tachin owns the properties where the restaurant Mr. Dominic's on Main was located and where the restaurant Mr. Dominic's at the Lake is located as a member and shareholder of two non-party corporate entities Speakeasy Properties, LLC and 4699 Lake Ave, LLC. Tachin Dep. 40:21–42:19, 44:8–25, Beckles Decl. Ex. 1.

(EEOC SOF ¶¶ 7–12.) Defendants dispute paragraph 12, asserting that:

12.   The EEOC mischaracterizes the ownership of the properties described in this allegation. John Tachin does not own the properties. During the time it was operating, Green Lantern rented the restaurant property in Fairport from Speakeasy Properties, LLC ("Speakeasy"), the owner of the premises. Tachin Decl. ¶ 16. At all times Speakeasy had two members, Gary Polisseni and John Tachin. Tachin Decl. ¶ 16. Pullman rents the Charlotte restaurant premises from 4699 Lake Avenue, LLC, a New York limited liability company. Tachin Decl. ¶ 8.

(Defs.' Resp. ¶ 12.) Although Defendants clarify the ownership of the properties

through corporate entities controlled in part by Mr. Tachin, the essential facts remain

that, as stated next, Mr. Tachin owned Speakeasy Properties, LLC.

13. Speakeasy Properties, LLC is a New York limited liability company owned by John Tachin. Tachin Dep. 42:7–16, Beckles Decl. Ex. 1; Warren Dep. 157:3–10, Beckles Decl. Ex. 13.

14. Speakeasy Properties, LLC owns the real property where Mr. Dominic's on Main was located. Tachin Dep. 40:21–25, 42:17–19, 49:4–18, 257:7–10, Beckles Decl. Ex. 1.

15. Tachin is a member and officer of Speakeasy Properties, LLC. Tachin Dep. 42:7–9, 49:4–18, Beckles Decl. Ex. 1.

16. Speakeasy Properties, LLC has one other officer and no employees. Tachin Dep. 42:7–16, 49:4–18, Beckles Decl. Ex. 1.

17. Speakeasy Properties, LLC does not conduct any other business besides owning the real property where Mr. Dominic's on Main is located. Tachin Dep. 49:4–13, Beckles Decl. Ex. 1.

(EEOC SOF ¶¶ 13–17.) Defendants dispute the allegations in paragraphs 13 and 14, citing to their response to paragraph 12. Defendants admit the allegations in paragraphs 15–16, and dispute the allegation in paragraph 17, stating: "The cited testimony does not support the allegations in this paragraph. Instead, Mr. Tachin testified that Speakeasy owns and manages the real estate at 1 East Church Street in Fairport, New York. Tachin Depo. p. 49, l. 9–10 (Beckles Decl. Ex. 1) [Dkt 91-3 at p. 20.]." (Defs.' Resp. ¶ 17.) Whether Speakeasy Properties, LLC, manages other properties is not established by the portion of Mr. Tachin's testimony outlined above. The actual exchange does:

> Q. So you mentioned some other companies, and I want to make sure I get them all. You mentioned something called Speakeasy Properties, LLC, right?
>
> A. Yes.
>
> Q. And what does it do?
>
> A. It just owns, manages the real estate at 1 East Church Street, Fairport.
>
> Q. Is that the only real estate it manages or owns?
>
> A. Yes, ma'am.

(Tachin Dep. 49:4–13.)

EEOC next asserts: "18. The New York State Corporation and Business Entity Database lists '4699 Lake Avenue, Rochester, New York, 14612' as the '[a]ddress to which [the Department of State] will mail process if accepted on behalf of' Speakeasy Properties, LLC. Beckles Decl. Ex. 45." (EEOC SOF ¶ 18.) Defendants admit that allegation, however, dispute the following one: "19. Green Lantern paid rent to Speakeasy Properties, LLC for the real property space occupied by Mr. Dominic's on Main. Tachin Dep. 41:5–7, 41:19–42:6, Beckles Decl. Ex. 1." (EEOC SOF ¶ 19.) Defendants respond: "Plaintiff mischaracterizes Tachin's testimony. Tachin testified that Green Lantern rented a portion of the premises at 1 East Church Street from Speakeasy. Tachin Depo. p. 41, l. 5–25, p. 42, l. 1–6 (Beckles Decl. Ex. 1) [Dkt 91-3 at p. 18.]." (Defs.' Resp. ¶ 19.) The undersigned fails to find that a material issue of fact exists regarding who pays rent to whom for what amount of space. The actual exchange shows that Green Lantern used most of the space at the old Deland House in Fairport:

> Q. I guess I'm just trying to figure out what–you said that Green Lantern Inn did not rent the entire property from Speakeasy?
>
> A. Well, I guess I just mean that there was a lot of vacant space that was not–but yes. I mean, the space that was occupied, Green Lantern, you know, used the majority of it. The whole third story was vacant the whole time of operation, so that wasn't really–the downstairs, there's a little pub downstairs that wasn't really in operation for the past few years. So a good portion of the building, yes, they rented, but not all of it.

(Tachin Dep. 41:18–42:6.)

20. 4699 Lake Avenue LLC is a New York limited liability company owned by John Tachin. Tachin Dep. 44:18–25, Beckles Decl. Ex. 1; Warren Dep. 169:23–170:4, Beckles Decl. Ex. 13.

21. 4699 Lake Avenue LLC owns the real property where the restaurant, Mr. Dominic's at the Lake, is located. Tachin Dep. 44:18–25, 53:16–22, Beckles Decl. Ex. 1.

22. Tachin is the sole member and officer of 4699 Lake Avenue LLC. Tachin Dep. 44:18–25, 53:16–54:4, Beckles Decl. Ex. 1.

23. 4699 Lake Avenue LLC does not conduct any other business besides owning the real property where Mr. Dominic's at the Lake is located. Tachin Dep. 53:16–22, Beckles Decl. Ex. 1.

24. The New York State Corporation and Business Entity Database lists "4699 Lake Avenue, Rochester, New York, 14612" as the "[a]ddress to which [the Department of State] will mail process if accepted on behalf of" 4699 Lake Avenue LLC. Beckles Decl. Ex. 46.

25. Pullman Associates pays rent to 4699 Lake Avenue LLC for Mr. Dominic's at the Lake. However, from March 2020 through at least March 2021, Tachin has waived the rent due to 4699 Lake Avenue, LLC. Tachin Dep. 44:11–17, Beckles Decl. Ex. 1.

(EEOC SOF ¶¶ 20–25.) Defendants dispute the information asserted in paragraph

25, responding:

25. Plaintiff mischaracterizes Tachin's testimony. Tachin testified that Pullman rents the premises at 4699 Lake Ave., Rochester, New York from 4699 Lake Avenue LLC. Tachin Depo. p. 44, l. 11–17 (Beckles Decl. Ex. 1) [Dkt 91-3, p. 18]. Tachin further testified that, like many businesses, rent was not always paid during the year of the Covid-19 pandemic. *Id.* Tachin did not testify that the rent was permanently waived.

(Defs.' Resp. ¶ 25.) The disputed information is not material to the issue at hand.

26. There are no other tenants besides Mr. Dominic's at the Lake at 4699 Lake Avenue. Tachin Dep. 53:23-25, Beckles Decl. Ex. 1.

27. Tachin also utilized the services of his company, Jetset Development, to perform construction, property maintenance, and plumbing repairs for Green Lantern and Pullman Associates at Mr. Dominic's on Main

and Mr. Dominic's at the Lake. Tachin Dep. 50:2–19, 51:9–11, 262:15–25, Beckles Decl. Ex. 1.

(EEOC SOF ¶¶ 26–27.)

Defendants dispute paragraph 27, stating "The EEOC mischaracterizes the cited testimony to make a broad generalization in paragraph 25. The cited testimony states that Jetset Development performed 'smaller' maintenance work such as 'clogged toilets and stuff like that.' Tachin Depo., p. 52, l. 9-15. (Beckles Decl. Ex. 1) [Dkt 91-3, p. 20]" (Defs.' Resp. ¶ 27). Defendants' response appears to be just filling out the facts.

### Mr. Tachin's Operations Oversight

Plaintiff next asserts: "28. Tachin currently oversees the operation of Mr. Dominic's at the Lake. Tachin also oversaw the operation of Mr. Dominic's on Main when it was open for business. Tachin Dep. 37:5–17, Beckles Decl. Ex. 1." (EEOC SOF ¶ 28.) Defendants dispute EEOC's statement: "The EEOC mischaracterizes the operations of the Pullman Charlotte restaurant and the Green Lantern Fairport restaurant. At all times, different general managers were responsible for managing the day-to-day operations of these separate restaurants. Tachin Decl. ¶¶ 17–27." (Defs.' Resp. ¶ 28.) The exchange on this issue provides the following information:

Q. Mr. Tachin, are you currently employed?

A. Yes.

Q. What do you do?

A. I run–oversee the operation of the restaurant on Lake Avenue, and I oversee rental properties that I've accumulated through the years.

14

Q. And the operation of the restaurant on Lake Avenue is Mr. Dominic's at the Lake; is that right?

A. Yes, ma'am.

Q. And previously did you oversee operation of Mr. Dominic's on Main?

A. Yes.

Q. And are you the owner of both restaurants?

A. Yes, I am.

Q. And are you the owner of Green Lantern Inn, Inc., and Pullman Associates, LLC?

A. They're owned corporately, but, yes, I'm a member of the—the corporation owns it, yes.

Q. And aside from overseeing the operation of the restaurants and these rental properties, do you do anything else professionally?

A. I'm a mason by trade, so I do—mostly most of my work these days is repair and maintenance on properties that I own, lease, or businesses I own. Renovation work and so on.

Q. Do you do any of that work for properties that you don't own?

A. Not in many years. I used to, but I don't subcontract anymore.

Q. Is there any other work that you do professionally?

A. No, there's not.

(Tachin Dep. 37:5–23:13.) In his declaration, from which Defendants quote, is the following pertaining to the same issue:

Separate Management

17. At all times, different managers were responsible for managing the day to day operations of Mr. Dominic's at the Lake and Mr. Dominic's on Main.

18. The restaurants are located about twenty miles apart, and it is about a thirty-minute drive between the two locations. It would not have been

15

possible for one person to manage the day to day operations of both restaurants at the same time.

19. From June 2014 through the present, Andrea Bullock ("Bullock") has been the General Manager of Pullman d/b/a Mr. Dominic's at the Lake, responsible for the daily operations of that restaurant, including hiring and firing employees, disciplining employees, inventory and sanitation.

20. Bullock has only worked at Mr. Dominic's at the Lake and did not have any responsibilities at Mr. Dominic's on Main.

21. While it was operating, Green Lantern d/b/a Mr. Dominic's on Main always had its own manager who only worked at the Fairport restaurant.

22. Anthony Barbone was the General Manager of Green Lantern in Fairport from the time that it first opened in 2014 through August 2018.

23. Barbone was responsible for the daily operation of the Green Lantern restaurant, including hiring and firing employees, disciplining employees, inventory, and sanitation.

(Tachin Decl. ¶¶ 18–24, ECF No. 106-1.) As described above, Mr. Tachin stated he "oversaw" operations at Pullman Associates and Green Lantern. That assertion is not controverted by Defendants' statement that there were separate general managers, accordingly, the undersigned finds that Defendants' objection should be disregarded. *See Baity*, 51 F. Supp. 3d at 418 (noting that statements that "speak[] past . . . asserted facts" or are "immaterial" may be disregarded); *Lee*, 520 F. Supp. 3d at 200 (same).

EEOC claims that "29. According to Jacklyn Casciola, a former employee who had worked at both restaurants, Tachin was 'the person that everyone answered to.' Casciola Dep. 60:6, Beckles Decl. Ex. 14." (EEOC SOF ¶ 29.) Defendants dispute this as well, writing: "See response to paragraph 28 concerning the operations of the Pullman Charlotte restaurant and the Green Lantern Fairport restaurant. Tachin

Decl. ¶¶ 17-27." For the same reasons stated in the paragraph immediately above,

the undersigned will disregard Defendants' objection.

### Office Manager Patricia Warren

30. Patricia Warren has been employed with Pullman Associates since June 2012. Warren Dep. 26:11–14, 26:24–27:4, Beckles Decl. Ex. 13.

31. Although Warren's paychecks and W-2 statements are issued by Pullman Associates, Warren was the Office Manager for both Green Lantern (when it was operating) and Pullman Associates. Warren Dep. 26:13–23, Beckles Decl. Ex. 13; Tachin Dep. 40:3–11, Beckles Decl. Ex. 1.

(EEOC SOF ¶ 30–31.) While Defendants admit paragraph 30, they dispute paragraph

31 stating:

The cited testimony does not support the exaggerated allegation that Ms. Warren was the office manager for both Pullman and Green Lantern. Ms. Warren performed upper-level bookkeeping and some human resources tasks for both defendants such as preparing profit and loss and balance sheets for both defendants for purposes of providing those documents to defendants' accountants for tax purposes. Tachin Decl. ¶ 33.

However, Mr. Tachin indicated that Ms. Warren is his office manager for the Green

Lantern Inn: "Well, the d/b/a of Mr. Dominic's had many employees. Green Lantern

Inn did not. I mean, Green Lantern, besides myself and Mr. Warren, who is my office

manager, did the day-to-day bills and so on and so forth." (Tachin Dep. 39:21–25.) Mr.

Tachin also indicated that Ms. Warren works for Pullman Associates. (Tachin Dep.

40:9–11.) In her deposition, Ms. Warren stated that she is the office manager for

Pullman Associates. (Warren Dep. 26:11–23.) Mr. Tachin's Declaration only states

that she was an "upper level Business Manager performing tasks . . . for both

defendants." (Tachin Decl. ¶ 33.) Defendants' objection based on Mr. Tachin's

Declaration should be disregarded as unsupported by the record: there is no dispute as to whether Ms. Warren was the office manager of both businesses. *See Holtz*, 258 F. 3d at 73 (noting that district courts may disregard unsupported factual assertions under their versions of Local Rule 56); *Brooks*, 2015 WL 13745440, at *1 (disregarding unsupported factual assertions).

> 32. Warren's primary office is located at 4699 Lake Avenue in the building where Mr. Dominic's at the Lake is located. When Mr. Dominic's on Main was open for business, Warren worked two days per week, on Tuesdays and Thursdays, out of an office at Mr. Dominic's on Main located at 1 East Church Street. Warren Dep. 26:20–28:2, 64:3–4, Beckles Decl. Ex. 13; Bardanis Dep. 30:12–31:12, Beckles Decl. Ex. 15.
>
> 33. Warren shared office space with Owner John Tachin and General Manager Anthony Barbone at Mr. Dominic's on Main. Barbone Dep. 37:11–20, Beckles Decl. Ex. 6.

(EEOC SOF ¶ 32–33.) Defendants admit paragraph 32 but dispute 33 stating: "33. Defendants dispute the allegations in paragraph 33 in that the EEOC mischaracterizes Barbone's testimony. The cited testimony states that there was an office located at Mr. Dominic's on Main that was shared by the General Manager Anthony Barbone, the chef, Tachin, Warren, and the banquet manager." (Defs.' Resp. ¶ 33.) This appears to be only a fleshing out of the details. EEOC continues:

> 34.Warren was responsible for financial bookkeeping for both Green Lantern and Pullman Associates. Warren's bookkeeping duties included inputting bills into QuickBooks®, processing the daily payment of bills, and preparing the financial statements (*e.g.*, profit and loss ("P & L") and balance sheets) for Green Lantern Inn's and Pullman Associates' tax accountant at the end of the year. Warren Dep. 29:9–16, 30:18–31:6, 33:10–15, 152:6–15, 170:25–171:5, Beckles Decl. Ex. 13.

(EEOC SOF ¶ 34.) This is contested by Defendants, who state that the "34. Defendants dispute the allegations in paragraph 34 to the extent that Plaintiff

mischaracterizes Warren's testimony. Patricia Warren performed upper-level bookkeeping and some human resources tasks for both defendants. Tachin Decl. ¶ 33." (Defs.' Resp. ¶ 34.) Defendants' contentions do not raise a material issue of fact as to Ms. Warren's bookkeeping duties.

EEOC states that "35. Warren's business email address ("PATTI@MRDOMINICS.COM") is listed under John Tachin's name as the email address of the authorized representative on Green Lantern's and Pullman Associates' 2019 New York State income tax returns. MRD000597, Beckles Decl. Ex. 4; MRD000652, Beckles Decl. Ex. 12." (EEOC SOF ¶ 35.)

> 35. Defendants dispute allegations in paragraph 35 in that the EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. Moreover, 2019 tax returns are not relevant to the claims or defenses in this action, all of which are claimed to have occurred when the complainants worked for Green Lantern, between July 2017 and June 2018. Tachin Decl. ¶¶ 35, 45, Ex. E.

(Defs.' Resp. ¶ 35.) EEOC provided a copy of the Green Lantern Inn, Inc., tax return dated July 30, 2020. (Beckles Decl. Ex. 4.) That copy does show the email address EEOC discusses in its statement

> 36. Warren also submitted payroll for employees who worked for Green Lantern and Pullman Associates at Mr. Dominic's on Main and Mr. Dominic's at the Lake. Warren's payroll management duties included making sure new employee paperwork was completed, inputting new employee information into the payroll system, and pulling reports from the restaurants' point-of- sale system. Warren Dep. 29:9–30:1, 30:13–17, 31:19–24, 88:24–89:15, Beckles Decl. Ex. 13; Barbone Dep. 119:17–20, Beckles Decl. Ex. 6.

(EEOC SOF ¶ 36.) "36. Defendants dispute the allegations in paragraph 36. The EEOC exaggerates and mischaracterizes testimony. At all times, the defendants each

ran their payroll separately using the services of a third-party company, USA Payroll. Tachin Decl. ¶ 37." (Defs.' Resp. ¶ 36.) In replying to Defendants' additional material facts statement, EEOC seems to concede that "the Defendants each ran their payroll separately using the services of a third-party company, USA payroll." (EEOC Resp. ¶ 40.) Nonetheless, the fact remains that there were payroll duties common to both Green Lantern Inn and Pullman Associates that Ms. Warren handled. (Warren Dep. 29:11–13.)

EEOC attests that: "37. Warren created, amended, and modified employee manuals and personnel policies for both Pullman Associates and Green Lantern using the web-based platform ThinkHR®. Tachin Dep. 253:17–25, Beckles Decl. Ex. 1; Warren Dep. 115:3–5, 117:6–119:8, 133:22–137:2, Beckles Decl. Ex. 13." (EEOC SOF ¶ 37). Defendants dispute this:

> 37. Defendants dispute the allegations in paragraph 37. The EEOC exaggerates and mischaracterizes testimony. The cited testimony does not support the allegations in this paragraph. Ms. Warren testified that the employee manual document was created "with the guidance of . . . a system that generates employee manuals." Warren Depo., p. 115, l. 3–5; p. 118, l. 14–17. (Beckles Decl. Ex. 13 [Dkt 91-3, pp 160-61].)

(Defs.' Resp. ¶ 37) Ms. Warren's testimony makes clear that she created the employee manual at issue by using an online system into which she entered only a few details, such as the name of the company. (Warren Dep. 115:18–23 ("So basically you–yes. So you pick your state, you pick your industry, you download it, and then pretty much all you do is put in–you can't change any of the legal advice on it, all you can change is your name or policies, like uniforms. There really isn't a lot you can change.")

EEOC claims that "38. Warren would also set up meetings, briefings, and training with State and local health departments and law enforcement on topics like updates to the health department code, ID checking, and alcohol service. Barbone Dep. 118:17-119:16, Beckles Decl. Ex. 6." (EEOC SOF ¶ 38.) Defendants' retort stating: "The EEOC exaggerates and mischaracterizes testimony. The cited testimony does not support the allegations in this paragraph and does not specify whether Mr. Barbone is testifying concerning Green Lantern's Fairport restaurant or Pullman's Charlotte restaurant." (Defs.' Resp. ¶ 38.)

"39. Warren managed employee disability benefits for employees who worked for Green Lantern and Pullman Associates at Mr. Dominic's on Main and Mr. Dominic's at the Lake by ensuring that disability benefits were paid as they became due. Warren Dep. 32:6–18, Beckles Decl. Ex. 13." (EEOC SOF ¶ 39.)

Defendants dispute this: "The EEOC exaggerates and mischaracterizes the cited testimony. Warren testified that her responsibilities with regard to employee benefits are that she 'just pay[s] the disability as it comes due.' Warren Depo p. 32, l. 6–18 (Beckles Decl. Ex. 13 [Dkt 91-3, p. 152].)" (Defs.' Resp. ¶ 39.) Ms. Warren's actual testimony does not support EEOC's contention that she "managed" the employee benefits:

Q. What are your responsibilities with respect to employee benefits?

A. I just pay the disability as it comes due. We don't offer health benefits.

Q. And do you do that both for Green Lantern and Pullman?

A. I do.

(Warren Dep. 32:12–18.)

40. Warren also ordered office supplies like paper, ink cartridges, and staples for the Green Lantern and Pullman Associates offices located at Mr. Dominic's on Main and Mr. Dominic's at the Lake. Warren Dep. 29:9–13, 30:3–12, Beckles Decl. Ex. 13.

41. Warren maintained financial files on QuickBooks® for Green Lantern and Pullman Associates. She also maintained hard copy personnel files for employees who worked for Green Lantern and Pullman Associates at Mr. Dominic's on Main and Mr. Dominic's at the Lake. Warren Dep. 31:25–32:5, 33:10–15, Beckles Decl. Ex. 13; Barbone Dep. 120:6–10, Beckles Decl. Ex. 6.

(EEOC SOF ¶ 40–41.) Defendants do not dispute paragraph 40 but dispute paragraph 41. "The EEOC exaggerates and mischaracterizes the cited testimony. There is no reference to 'hard copy' personnel files in the cited testimony nor any reference to where these documents are maintained." (Defs.' Resp. ¶ 41.) Defendants correctly point out that EEOC did not elicit testimony from Ms. Warren as to what type of filing system she maintained, only that she "maintain[ed] employee record files[.]" (Warren Dep. 31:25.) The dispute concerning the form of the records is immaterial to the pending motion.

### General Manager Anthony Barbone

42. Anthony Barbone was a General Manager for Green Lantern and Pullman Associates at Mr. Dominic's on Main and Mr. Dominic's at the Lake. Barbone began working at Mr. Dominic's on the Lake restaurant as its General Manager in 2012. When Mr. Dominic's on Main opened in 2014, Barbone started working at Mr. Dominic's on Main as its General Manager. Barbone Dep. 20:13–22:15, Beckles Decl. Ex. 6; MRD000153, Beckles Decl. Ex. 16.

(EEOC SOF ¶ 42.) Defendants state that "The EEOC mischaracterizes the facts. Mr. Barbone never worked for the Pullman restaurant and the Green Lantern restaurant simultaneously. Tachin Decl. ¶ 32." (Defs.' Resp. ¶42.) Mr. Barbone's testimony does indicate that he worked first for the restaurant on Lake Avenue, then when the

Fairport location opened at the Green Lantern, he moved to there. (Barbone Dep. 20:18–23.).

> 43. Tachin hired and supervised Barbone. Barbone Dep. 22:16–21, Beckles Decl. Ex. 6. (EEOC SOF ¶ 43.)

> 44 Although Barbone could hire, fire, set rate of pay, determine work hours, and discipline employees, Barbone could not give employees pay raises "without consultation with Tachin." Barbone also consulted with Tachin concerning employee discipline. Barbone Dep. 34:16–35:16, 52:16–53:10, Beckles Decl. Ex. 6.

> 45. After leaving the general manager position at Mr. Dominic's on Main in 2018, Barbone was rehired to work for Green Lantern and Pullman Associates at Mr. Dominic's on Main as a bartender from July 2019 through November 2019. Barbone Dep. 26:12–27:21, Beckles Decl. Ex. 6; MRD000050, Beckles Decl. Ex. 7; MRD000203-208, Beckles Decl. Ex. 16.

(EEOC SOF ¶ 44–45.) Defendants do not dispute paragraph 44 but do dispute paragraph 45: "The EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. Moreover, the EEOC mischaracterizes the facts. Mr. Barbone never worked for the Pullman and Green Lantern simultaneously. Tachin Decl. ¶ 32." (Defs.' Resp. ¶45.) Mr. Barbone's testimony *does* establish that he worked at Green Lantern from July 2019 until November 2019 as a bartender. (Barbone Dep. 26:12–16; 27:4–6.)

### *Rachel Clifford*

"46. From 2017–2018, Charging Party Rachel Clifford was employed by Green Lantern and Pullman Associates as a Server at Mr. Dominic's on Main. MRD000137, Beckles Decl. Ex. 17; MRD000415, 421, Beckles Decl. Ex. 18." (EEOC SOF ¶ 46.) Defendants state that "Rachel Clifford was employed by Green Lantern and not Pullman Associates. Tachin Decl. ¶¶ 35–36, 45 Ex. E. The documents cited by the

EEOC lack any foundation and are contradicted by Tachin's Declaration. *Id*." (Defs.' Resp. ¶ 46.) The Payroll Register Defendants submitted does show Rachel Clifford was paid as part of the wait staff at "Mr. Dominic's on Main." (Beckles Decl. Ex. 18.) Ms. Clifford's "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law Notice for Hourly Rate Employees," shows that she was employed by "Pullman Associates LLC, Green Lantern Inn Inc, Doing Business As (DBA)" and "Mr. Dominic's at the Lake, Mr. Dominic's on Main." (Beckles Decl. Ex. 17.) In its reply, EEOC states that Beckles Decl. Exs. 17 & 18 consist of "documents produced from Mr. Dominic's own financial records and human resources files . . . ." (EEOC Reply Mem. of Law at 2, ECF No. 117.) Moreover, Defendants do not dispute the authenticity; they merely complain that EEOC has not provided authentication. However, as stated in *John Paul Mitchell Sys. v Quality King Distribs, Inc.*, 106 F. Supp. 462, 472 (S.D.N.Y. 2000), "the act of production implicitly authenticated the documents." Not only are the documents from Defendants' production, but they also appear to be the records they purport to be and, thus, circumstantially attest to their authenticity. *Id*. For the purposes of the pending motion, the undersigned considered the documents to be authentic.

### *Jenna Kavanagh*

"47. From 2015–2019, Jenna Kavanagh was employed by Green Lantern and Pullman Associates in various positions, including as the Assistant Manager at Mr. Dominic's on Main. Barbone Dep. 123:7–124:3, Beckles Decl. Ex. 6; MRD000081, Beckles Decl. Ex. 19; MRD000226, 281, Beckles Decl. Ex. 20." (EEOC SOF ¶ 47) Defendants respond similarly to paragraph 46:

> Ms. Kavanaugh was employed by Green Lantern and not Pullman Associates and had no responsibilities at Pullman's restaurant. Tachin Decl. ¶¶ 26-27. Plaintiff mischaracterizes Barbone's testimony, which only states that Kavanaugh worked for Green Lantern. Barbone Depo. p. 123, l. 7 to p. 124, l. 3 (Beckles Decl. Ex. 13 [Dkt 91-3, p. 29].) . The EEOC fails to establish any foundation in connection with the additional documents cited, which are not admissible and contradicted by Tachin and Barbone's testimony. Id.

(Defs.' Resp. ¶ 45.) Similarly to Ms. Clifford, Jenna Kavanagh signed a "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law Notice for Hourly Rate Employees," showing that she was employed by "Pullman Associates LLC, Green Lantern Inn Inc, Doing Business As (DBA) . . . Mr. Dominic's at the Lake, Mr. Dominic's on Main." (Beckles Decl. Ex. 19.) For the same reasons stated regarding Ms. Clifford, the undersigned also considered the underlying documents to be authentic, disregarding Defendants' objection.

### Chef Paul Dowlatt

> 48. From 2014–2019, Paul Dowlatt—the harasser in this case—was employed by Green Lantern as a Cook and Chef on the Kitchen Staff at Mr. Dominic's on Main. Barbone Dep. 51:16–24, 116:12–16, Beckles Decl. Ex. 6; MRD000121, Beckles Decl. Ex. 21; MRD000349, 412, Beckles Decl. Ex. 22.

(EEOC SOF ¶ 48.) Defendants contend that "[t]he cited testimony does not support any of the allegations in this paragraph. The EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible." (Defs.' Resp. ¶ 48.) On the contrary, Mr. Barbone's testimony supports EEOC's allegations.

> 49. Dowlatt also worked at Mr. Dominic's at the Lake. For example, after Tachin suspended Dowlatt for two weeks during Mr. Dominic's investigation into a sexual harassment complaint made by Charging Party Rachel Clifford, Dowlatt worked at Mr. Dominic's at the Lake

because "the manager at the Lake was desperate for a cook". Tachin Dep. 114:10–24, Beckles Decl. Ex. 1.

(EEOC SOF ¶ 49.) Defendants state that Dowlatt's employment post suspension was

more complicated than what EEOC claims:

> The EEOC mischaracterizes Mr. Tachin's testimony. The testimony that Mr. Dowlatt helped out at the Charlotte restaurant, without Mr. Tachin's knowledge, does not mean Mr. Dowlatt was an employee of Pullman. Tachin Depo., p. 114, l. 10-25. (Beckles Decl. Ex. 1 [Dkt 91-3, p. 28].) Moreover, during the time period that Dowlatt was suspended without pay from Green Lantern, and worked at Mr. Dominic's at the Lake, he was not working for both defendants simultaneously. *Id.*

(Defs.' Resp. ¶ 49.) Mr. Tachin's testimony regarding Paul Dowlatt on this point

includes this exchange:

> Q. And he [Paul Dowlatt] was suspended without pay?
>
> A. Yes.
>
> Q. Did he get backpay later?
>
> A. No, he did not.
>
> Q. But he did work at the Lake location while he was suspended, right?
>
> A. One of the last days of the suspension–I don't think I had knowledge of it. I think the manager at the Lake was desperate for a cook and knew him and called him up and asked him, and he came in to help him out for the night.
>
> Q. Did the manager at the Lake know that Paul wasn't working at Main at the time?
>
> MR. PATTISON: I would object. Speculative.
>
> A. I don't know.

(Tachin Dep. 114:6–21.)

EEOC has brought in insurance information as proof of employer:

> 50. Moreover, Pullman Associates, LLC d/b/a Mr. Dominic's at the Lake is named as the employer, policy holder, and recipient of documents concerning Paul Dowlatt's disability insurance claims from April– September 2019 and the payment of paid family leave benefits to Paul Dowlatt in April–May 2018 and October 2018. These documents are all addressed to the attention of John Tachin at Pullman Associates' corporate address, 4699 Lake Avenue, Rochester, NY, 14612. MRD000523-26, 530-36, Beckles Decl. Ex. 23; MRD000527-29, Beckles Decl. Ex. 24.

(EEOC SOF ¶ 50.) "The EEOC failed to provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible." (Defs.' Resp. ¶ 50.) Defendants have submitted a paper from ShelterPoint Life Insurance Company purporting to pay Paul Dowlatt $195.50, and listing the address as follows:

> PULLMAN ASSOCIATES LLC DBA MR. DOMINICS AT THE LAKE
> ATTN: JOHN TACHIN
> 4699 LAKE AVENUE
> ROCHESTER, NY 14612

(Beckles Decl. Ex. 23.) As was the case with the Exhibits 18 and 19 discussed in relation to Rachel Clifford, the documents submitted to support EEOC's statement were produced by Defendants during discovery and are implied to be authentic. *John Paul Mitchell Sys.*, 106 F. Supp. 2d at 472. Further, the documents appear to be what they purport to be, further corroborating their authenticity. Finally, Defendants do not dispute their authenticity. For the purposes of this motion, the undersigned will consider them to be authentic.

### Abby Bardanis

EEOC discusses the employment of Abby Bardanis: "51. From 2014–2016, Abby Bardanis was employed as a Server at Mr. Dominic's on Main. Bardanis Dep.

6:22-7:7, 9:2-4, Beckles Decl. Ex.15. (EEOC SOF ¶ 51.)" Defendants partially dispute

this:

> The cited testimony does not support the allegations in this paragraph. Defendants admit Ms. Bardanis worked as a server at the Green Lantern restaurant in Fairport. It is also noted that Plaintiff claims that Bardanis was employed between 2014 and 2016, pre-dating any of the claims in this action. (Pl. Stm. Facts ¶ 51 [Dkt 91-2, p. 10].)

(Defs.' Resp. ¶ 51.) Defendants' response does not raise a material issue of fact. EEOC

states that

> 52. Although she worked at Mr. Dominic's on Main, Bardanis was trained for the Server position at Mr. Dominic's at the Lake. According to Bardanis, she worked three shifts at Mr. Dominic's at the Lake "to learn how they serve at Mr. Dominic's." Bardanis Dep. 7:12–17, 23–25, Beckles Decl. Ex. 15.

(EEOC SOF ¶ 52.) Defendants dispute this stating "No employees worked for Green

Lantern and Pullman simultaneously. Tachin Decl. ¶ 32." (Defs.' Resp. ¶ 52.) Ms.

Bardanis's testimony does support the statement of fact: she trained at the Lake

location and went to work at the Fairport location.

EEOC states that "53. According to Bardanis, 'most people that started at [Mr.

Dominic's on Main] trained at [Mr. Dominic's at the] Lake and then moved to [Mr.

Dominic's on Main].' Bardanis Dep. 7:17–19, Beckles Decl. Ex. 15." (EEOC SOF ¶ 53.)

Defendants repeat "No employees worked for Green Lantern and Pullman

simultaneously. Tachin Decl. ¶ 32." (Defs.' Resp. ¶ 53.) The testimony cited directly

supports EEOC's statement of fact.

### Alissa Bean

EEOC states that "54. In 2017, Claimant Alissa Bean was employed by

Pullman Associates and Green Lantern as a Cook on the Kitchen Staff at Mr.

Dominic's on Main. Barbone Dep. 108:8–13, 109:10–11, Beckles Decl. Ex. 6; MRD000041, Beckles Decl. Ex. 25; MRD000150, Beckles Decl. Ex. 26." (EEOC SOF ¶ 54.) Defendants dispute this as well: "No employees worked for Green Lantern and Pullman simultaneously. Tachin Decl. ¶ 32." (Defs.' Resp. ¶ 54.) As with the other two employees discussed above, Alissa Bean signed a "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law Notice for Hourly Rate Employees," showing that she was employed by "Pullman Associates LLC, Green Lantern Inn Inc, Doing Business As (DBA) … Mr. Dominic's at the Lake, Mr. Dominic's on Main." (Beckles Decl. Ex. 25.) For the reasons stated concerning Ms. Clifford and Ms. Bardanis, the undersigned also considered the underlying exhibits pertaining to Ms. Bean to be authentic, disregarding Defendants' objection.

EEOC states that: 55. Although Bean worked at Mr. Dominic's on Main, Pullman Associates issued her 2017 W-2. Beckles Decl. Ex. 27. (EEOC SOF ¶ 55.)

> Defendants responded with
>
> The EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. No employees worked for Green Lantern and Pullman simultaneously. Tachin Decl. ¶ 32. Ms. Bean worked for Green Lantern at the Fairport restaurant and never worked for Pullman. Tachin Decl. ¶¶ 35–36.

(Defs.' Resp. ¶ 55.) The W-2 submitted supports EEOC's statement of fact and the undersigned makes the same finding of authenticity it did with the other exhibits discussed above based on the factors discussed in *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000).

### Jacklyn Casciola (neé Cavuoto)

EEOC then discusses the employment of a server:

56. From 2014–2015, Jacklyn Casciola (née Cavuoto) was employed by Pullman Associates as a Server at Mr. Dominic's on Main and Mr. Dominic's at the Lake. Casciola Dep. 7:20–8:2, 11:18–21, 12:10–24, Beckles Decl. Ex. 14; Warren Dep. 147:6-8, Beckles Decl. Ex. 13; MRD000069, Beckles Decl. Ex. 28; MRD000210, 223, Beckles Decl. Ex. 29.

(EEOC SOF ¶ 56.) Defendants, as with the others, disputes what is said:

56.    Defendants dispute the allegations in paragraph 56 in that the EEOC failed to provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. The EEOC mischaracterizes the testimony. No employees worked for Green Lantern and Pullman simultaneously. Tachin Decl. ¶ 32. Moreover it is noted that the EEOC claims that Casciola worked for defendant between 2014 and 2015, pre-dating any claims in this action, and thus her employee status is irrelevant to the claims herein.

(Defs. Resp. ¶ 56.) Jacklyn Cavuoto signed a "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law Notice for Hourly Rate Employees," showing that she was employed by "Pullman Associates LLC Doing Business As (DBA) . . . Mr. Dominic's at the Lake." (Beckles Decl. Ex. 28.) Her testimony supports EEOC's statement that she worked both at the Fairport location and at the Lake Avenue location. It is for the undersigned to determine as a matter of law whether the evidence presented on the motion shows that any employee worked for both companies simultaneously.

EEOC continues discussing Casiola's employment: "57. In 2014, Casciola first began working for Pullman Associates at Mr. Dominic's on Main. Warren Dep. 148:17–19, Beckles Decl. Ex. 13; MRD000522, Beckles Decl. Ex. 30." (EEOC SOF ¶ 57.) Defendants dispute this: "57. Defendants dispute the allegations in paragraph 57. Green Lantern employed the workers at the Fairport restaurant. Tachin Decl. ¶¶ 28–32, 34." (Defs.' Resp. ¶ 57.) The evidence submitted by EEOC supports its

statement. Ms. Casciola testified about her work but did not indicate that she was employed by Pullman. The "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law Notice for Hourly Rate Employees," is the only indication that she was employed by Pullman.

> EEOC discusses the Ms. Casciola's pregnancy:
>
> 58. When Casciola was 6–7 months pregnant and could no longer go up and down stairs at Mr. Dominic's on Main, Pullman Associates transferred Casciola to work as a Server at Mr. Dominic's at the Lake. Warren Dep. 147:9-14, 148:20-22, Beckles Decl. Ex. 13; MRD000522, Beckles Decl. Ex. 30.

(EEOC SOF ¶ 58.) Defendants state that "The EEOC mischaracterizes testimony and evidence. Green Lantern employed the workers at the Fairport restaurant and Pullman employed the workers at the Charlotte restaurant. Tachin Decl. ¶¶ 28–32, 34" (Defs.' Resp. ¶ 58.) This appears to be more of a clarification regarding employment and not a disputed issue of fact. Defendants do not dispute that Ms. Casciola worked for Mr. Dominic's at the Lake as an accommodation of her pregnancy. Accordingly, the undersigned finds that Defendants' objection should be disregarded as immaterial. *See Baity*, 51 F. Supp. 3d at 418 (noting that statements that "speak[] past . . . asserted facts" or are "immaterial" may be disregarded); *Lee*, 520 F. Supp. 3d at 200 (same).

EEOC then moves to discussing unemployment: "59. In or around September or October 2015, Casciola stopped working at Mr. Dominic's at the Lake and filed a claim for unemployment benefits. Casciola Dep. 53:15–20, 55:2–4, Beckles Decl. Ex. 14; Warren Dep. 147:9–14, Beckles Decl. Ex. 13." (EEOC SOF ¶ 59.) Defendants respond with "The cited testimony does not state when Ms. Casciola filed for

unemployment benefits" (Defs.' Resp. ¶ 55.) Ms. Casciola testified that she stopped

working in October 2015 when she "started to go into labor, basically." (Casciola Dep.

53:17–19.) Approximately two weeks after her baby's birth, she attempted to return

to work, but learned that another person had been hired to take her place, and that

is when she made a claim for unemployment benefits, according to her testimony.

(Casciola Dep. 54–55.) Ms. Warren's testimony disputes this, claiming that she did

offer Ms. Casciola a job. (Warren Dep. 147:20–23.)

> EEOC discusses Warren's letter to the Department of Labor:
>
> 60. On or around February 9, 2016, Office Manager Patricia Warren
> drafted and sent a letter to the New York State Department of Labor
> concerning Casciola's unemployment benefits claim. Warren drafted the
> letter on Pullman Associates' letterhead. In the letter, Warren referred
> to Mr. Dominic's on Main as "our other location." Warren Dep. 146:14–
> 147:2, 147:20–23, 148:5–16, Beckles Decl. Ex. 13; MRD000522, Beckles
> Decl. Ex. 30.

(EEOC SOF ¶ 60.) Defendants dispute the conjoined operation of these entities:

> Green Lantern and Pullman have at all times operated as separate
> entities and separate employers. Tachin Decl., ¶ 2. Moreover, per
> Plaintiff the alleged letter was sent on February 9, 2016, pre-dating any
> claims in this action and thus not relevant to the determination of the
> claims herein. (EEOC Stm of Facts ¶ 60 [Dkt 91-2 p. 11].)

(Defs.' Resp. ¶ 60.) EEOC has included a copy of Ms. Warren's letter, dated February

9, 2019, and written on letterhead that states; "Mr. Dominic's at the Lake,

Established 1976, Pullman Associates LLC." (Beckles Decl. Ex. 30.) Ms. Warren's

letter to the New York State Department of Labor begins thus: "Jacklyn [Cavuoto]

had been employed by Mr. Dominic's on Main (our other location) starting 6/25/14."

(Beckles Decl. Ex. 30 at 1.) Thus, EEOC's factual recitation is correct; the legal

conclusion to be drawn from Ms. Warren's words, "(our other location)," is what is in dispute.

### *Melissa Connors*

EEOC next discusses Melissa Connors and her employment: "61. Melissa Connors was employed by Pullman Associates as a Server at Mr. Dominic's on Main and Mr. Dominic's at the Lake from 2014–2016. Connors Dep. 8:15-23, Beckles Decl. Ex. 31; MRD000112, Beckles Decl. Ex. 32; MRD000326, 346, Beckles Decl. Ex. 33." (EEOC SOF ¶ 61.) Defendants responded by stating:

> No employees worked for Green Lantern and Pullman simultaneously. Tachin Decl.¶ 32. The EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. Moreover the EEOC claims that Connors was employed by defendants between 2014 and 2016, pre-dating any claims herein and thus not relevant to Plaintiff's claims. (EEOC Stm of Facts ¶ 61 [Dkt 91-2 p. 12].)

(Defs.' Resp. ¶ 61.) This is analogous to the other disputes repeated above. Ms. Connors did testify as EEOC relates. She testified she worked at "[t]he Fairport location as well as here and there at the Charlotte location, but mostly, 99 percent of the time, the Fairport location." (Connors Dep. 8:9–1.) EEOC's factual assertion is supported by her testimony; the legal conclusion to draw from it is disputed.

> 62. Connors testified that she spent "99 percent of the time" at Mr. Dominic's on Main restaurant and worked "here and there" at Mr. Dominic's at the Lake. Connors Dep. 8:4-14, Beckles Decl. Ex. 31.

> 63. Connors testified further that she worked approximately 10 shifts on an "on-call basis" at Mr. Dominic's at the Lake. Connors Dep. 13:9-19, Beckles Decl. Ex. 31.

> 64. Rachel Clifford—a server at Mr. Dominic's on Main—drafted a written complaint, dated January 24, 2018, stating that she had been

subjected to "sexual, nonsexual, bullying, intimidation and threatening" behavior by Chef Paul Dowlatt. MRD000002, Beckles Decl. Ex. 34.

(EEOC SOF ¶¶ 62–64.)

### *The Response to Ms. Clifford's Sex Harassment Complaint*

Defendants admit the assertions in paragraphs 62 and 63, but dispute the assertion in paragraph 64, stating: "64. The EEOC failed to provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. Further, Clifford's unsworn letter attached to the EEOC's attorney's declaration is not admissible as evidence in support of plaintiff's motion for summary judgment." (Defs.' Resp. ¶ 64.) Defendants are essentially making a hearsay objection to the undersigned's consideration of the contents of Ms. Clifford's letter. If EEOC is presenting evidence of the letter to prove that it was written, then it would not necessarily be hearsay. Fed. R. Evid. 801(c). If, however, EEOC is offering the letter to prove that Chef Dowlatt harassed Ms. Clifford, then it would be hearsay and would need to qualify under an exception to the hearsay rule. The undersigned accepts the letter as proof of the assertion that Ms. Clifford made a written complaint against Chef Dowlatt.

EEOC states that "65. Owner John Tachin testified that, after Barbone was made aware of Clifford's allegations, Tachin received a phone call from Barbone to notify him that Clifford had made 'serious allegations' and that Tachin 'should be involved.' Tachin Dep. 59:22–60:12, 61:24–25, 65:4–17, Beckles Decl. Ex. 1." (EEOC SOF ¶ 65.) Defendants dispute this, stating that "[t]he EEOC mischaracterizes

Tachin's testimony, which speaks for itself." (Defs.' Resp. ¶ 65.) The full excerpt of

Mr. Tachin's testimony reads as follows:

> [A.] And then the next morning I received a phone call from my general
> manager, stating that Rachel [Clifford] made this allegation, and that's
> when I called a meeting with Mr. Barbone and Ms. Clifford and Mr.
> Dowlatt and myself out at the location.
>
> Q. Okay. So when you say you received a call from your general
> manager, was that Mr. Barbone?
>
> A. Yes, it was.
>
> Q. And when Mr. Barbone called you, do you know whether or not he
> had seen this complaint yet?
>
> A. I'm saying he probably did, because he said that she came in and she–
> I forgot the way he put it. That she's making some pretty serious
> allegations and that he thought that maybe I should be involved, and so
> I ran right out there.…
>
> [A.] So, I mean, he told me over the phone it's just a letter, and that's
> why I, you know, got in the car and I went out there right away.…
>
> Q. And I'm going to ask you about that meeting. Before I do, what I want
> to know is, before you got to the restaurant, did Mr. Barbone tell you
> anything about the specifics of what Ms. Clifford was alleging?
>
> A. Again, it's a while ago, but I believe he started the conversation
> explaining the previous night or–I mean, it was all within a day or two.
> I don't remember the exact time. But he had said, you know, it started
> with a disagreement they had in the kitchen, and then he said the
> following day she came in alleging, he said, all this harassment and
> hostile work en– he just kind of gave me the CliffsNotes of the letter.

(Tachin Dep. 59:22–60:12, 61:24–25, 65:4–17.) EEOC's factual recitation is supported

by Mr. Tachin's testimony.

EEOC claims that "66. Tachin testified that he received a copy of Clifford's

complaint and met with Clifford, and interviewed Dowlatt about the allegations in

Clifford's complaint." Tachin Dep. 57:16–59:2, 60:18–61:15, 71:6–22, Beckles Decl.

Ex. 1. (EEOC SOF ¶ 66.) Defendants again dispute this, "The EEOC misstates the cited testimony and omits that Mr. Barbone, Green Lantern's general manager, was present for interviews. Tachin Depo., p. 71 (Beckles Decl. Ex. 1 [Dkt 91-3, p. 25].)" (Defs.' Resp. ¶ 66.) Defendants' do not raise a material issue of fact with their contention.

> EEOC states:
>
> 67. Tachin testified further that he had Office Manager Patricia Warren review video footage. But Warren testified that the video footage from January 22, 2018, the day Dowlatt harassed Clifford, was not included in the video she was asked to review. Tachin Dep. 73:17–21, 107:14–108:2, Beckles Decl. Ex. 1; Warren Dep. 68:21–24, 73:2–15, 76:24–77:3, Beckles Decl. Ex. 13.

(EEOC SOF ¶ 67.) Defendants assert that "The EEOC misstates the cited testimony, and it does not support the allegations in paragraph 67." (Defs.' Resp. ¶ 67.) EEOC's assertion identifies a discrepancy between Mr. Tachin and Ms. Warren regarding the video footage.

EEOC stated that "68. Tachin testified that he suspended Dowlatt for two weeks without pay but was aware Dowlatt worked at Mr. Dominic's at the Lake during the suspension because 'the manager at the Lake was desperate for a cook'. Tachin Dep. 114:3–25, Beckles Decl. Ex. 1." (EEOC SOF ¶ 68.) Defendants dispute this:

> The EEOC mischaracterizes the testimony it cites. Tachin did not testify that he suspended Dowlatt, but rather that Dowlatt "was suspended without pay." (Tachin Decl. p. 114, l. 3–7 (Beckles Decl. Ex. 1 [Dkt 91-3, p. 28].) Tachin further testified "I don't think I had knowledge of it" when referencing Mr. Dowlatt's work at the Charlotte location referenced in paragraph 68. (Tachin Decl. p. 114, l. 12–16 (Beckles Decl. Ex. 1 [Dkt 91-3, p. 28]).

(Defs.' Resp. ¶ 68.) The undersigned will credit the testimony from Mr. Tachin as describing the situation, as discussed above at page 26.

EEOC states that "69. According to payroll records, on February 9, 2018, Dowlatt was paid for the 7 hours he worked at Mr. Dominic's at the Lake during the week of January 28–February 3, 2018—before the end of his two-week suspension period. MRD000388-89, Beckles Decl. Ex. 22." (EEOC SOF ¶ 69.) Unsurprisingly, Defendants dispute this and state "[t]he EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible." (Defs.' Resp. ¶ 69.) Exhibit 22 from the Beckles declaration includes pay records for Chef Dowlatt and shows he received pay for February 2, 2018. (Beckles Decl. Ex. 22 at 40.[6]) According, the undersigned finds that Defendants' objection should be disregarded as unsupported and immaterial. *See Baity*, 51 F. Supp. 3d at 418; *Lee*, 520 F. Supp. 3d at 200 (disregarding "ancillary" portions of the parties' Local Rule 56 statements).

EEOC continues "70. Tachin testified that he decided to bring Dowlatt back to work at Mr. Dominic's on Main with a warning. Tachin signed the warning, dated January 28, 2018. Tachin Dep. 124:3–126:17, 139:3–10; Beckles Decl. Ex. 1; MRD000031, Beckles Decl. Ex. 35." (EEOC SOF ¶ 70.) Defendants again state "The EEOC mischaracterizes the testimony it cites. The EEOC did not provide a foundation for the alleged documentary evidence supporting the allegations in this

---

[6] The page number of the pay record is marked at the bottom right under the date printed information.

paragraph and it is inadmissible." (Defs.' Resp. ¶ 70.) The exhibit contains a document titled "Employee Warning Notice," stating that Chef Dowlett had been warned not to have any contact with Rachel Clifford and the consequence would be an immediate termination. (Beckles Decl. Ex. 35.) The form is signed by "Manager/Supervisor" and "Witness" and both signatures bear the date of January 28, 2018. (*Id*.) One of the signatures was Mr. Tachin's who signed above the "Witness Signature" line. (Beckles Decl. Ex. 35.) Exhibit 35, the warning, was provided by Defendants, and as such, is implied to be authentic. (EEOC Reply Mem. of Law 3.) As stated above regarding other records Defendants have disputed, the undersigned makes the same finding of authenticity based on the factors discussed in *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000).

EEOC states that "71. According to employee time records, Dowlatt did not work for at Mr. Dominic's on Main for 11 days, from January 24–February 4, 2018, and returned to work at the restaurant on February 5, 2018. MRD000488, Beckles Decl. Ex. 36." (EEOC SOF ¶ 71.) Defendants again state "The EEOC did not provide a foundation for the alleged documentary evidence supporting the allegations in this paragraph and it is inadmissible." (Defs.' Resp. ¶ 71.) Again, Defendants do not dispute the authenticity of documentary evidence they provided to EEOC. The undersigned makes the same finding of authenticity it made above, based on the factors discussed in *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000).

EEOC claims that "72. Tachin testified that he also signed a warning issued to Clifford after she complained of Dowlatt's sex harassment. Tachin Dep. 133:11–135:25, 138:9–139:2, Beckles Decl. Ex. 1; MRD000001, Beckles Decl. 37."(EEOC SOF ¶ 72.) Defendants retort by stating "The EEOC mischaracterizes the testimony it cites. Ms. Clifford was warned for her possible food contamination. Tachin Deposition p. 134, l. 2–3 (Beckles Decl. Ex. 1 [Dkt 91-3 p. 28].)" (Defs.' Resp. ¶ 72.) Defendants are correct in stating that Clifford was warned for food contamination issues, and EEOC is correct in asserting that Mr. Tachen signed the warning discussed above. (Tachen Dep. 124:12–125:10.)

EEOC then attests that:

> 73. Tachin testified further that he met with Clifford again and explained to her that he could not afford to terminate a chef that he had invested so much time training, and instructed her to bring any future allegations to him directly. Tachin Dep. 139:21–140:11, 145:3–6, 190:6–191:11, Beckles Decl. Ex. 1.

(EEOC SOF ¶ 73.) Defendants dispute this stating "The EEOC mischaracterizes the testimony it cites. Mr. Tachin testified that if he knew Dowlatt 'was in the wrong, [Tachin] would fire [Dowlatt] instantly.' Tachin Depo. 191:12–13 (Beckles Decl. Ex. 1 [Dkt 91-3 p. 34])." (Defs.' Resp. ¶ 73.) Both the assertion by EEOC and Defendants' response are supported by the evidence cited.  The undersigned disregards this objection: it simply "speaks past . . . the asserted facts" as opposed to addressing them. *Baity*, 51 F. Supp. 3d at 414 (disregarding "immaterial" assertions); *Lee*, 520 F. Supp. 3d at 200 (disregarding "ancillary" portions of the parties' Local Rule 56 statements).

### Ms. Clifford's EEOC Charge

EEOC continues: "74. On September 14, 2018, Clifford filed a charge of discrimination with EEOC alleging that her former employer violated Title VII by subjecting her and other employees to harassment based on sex. EEOC0000105-06, Beckles Decl. Ex. 38." (EEOC SOF ¶ 74.) Defendants dispute this: "The EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible." (Defs.' Resp. ¶ 74.) Exhibit 38 is a signed EEOC Charge of Discrimination. Further, EEOC is using it to prove that it was filed, not the contents of the complaint.

### The Employee Manual

EEOC states: "75. Office Manager Patricia Warren created and maintained an employee handbook entitled 'Employee Manual Mr. Dominic's at the Lake And Mr. Dominic's on Main.'" Tachin Dep. 252:23-253:12, Beckles Decl. Ex. 1; Warren Dep. 115:3-5; 118:14-17, Beckles Decl. Ex. 13; MRD000005, Beckles Decl. Ex. 39." (EEOC SOF ¶ 75.) Defendants dispute this assertion, stating

> The cited testimony does not support the allegations in this paragraph. Ms. Warren testified that the employee manual document was created "with the guidance of . . . a system that generates employee manuals." Warren Testimony 115:3–5; 118:14–17. (Beckles Decl. Ex. 13 [Dkt 91-3 p. 160–61]). The cited testimony makes no reference to maintenance of the employee manual.

(Defs.' Resp. ¶ 75.) As discussed earlier, Ms. Warren's testimony makes clear that she created the employee manual at issue by using an online system into which she entered only a few details, such as the name of the company. (Warren Dep. 115:18–23 ("So basically you—yes. So you pick your state, you pick your industry, you

download it, and then pretty much all you do is put in—you can't change any of the legal advice on it, all you can change is your name or policies, like uniforms. There really isn't a lot you can change.")

EEOC continues: "76. Each page of the Employee Manual bears the footnote inscription: Property of Mr. Dominic's at the Lake and Mr. Dominic's on Main 4699 Lake Avenue Rochester, NY 14612 585.730.5444 Beckles Decl. Ex. 39." (EEOC SOF ¶ 76.) Defendants respond with "The EEOC fails to lay a foundation, and mischaracterizes testimony and evidence. Green Lantern and Pullman had separate management. Tachin Decl. ¶¶ 17–27" (Defs.' Resp. ¶ 76.) Defendants' do not dispute the assertion of fact, merely the legal conclusion to be drawn from it.

EEOC continues discussing the manual:

77. Mr. Dominic's Employee Manual includes a section entitled "Welcome & Introduction" that states, in relevant part:

We believe that each employee contributes directly to Mr. Dominic's at the Lake and Mr. Dominic's on Main Restaurant's growth and success, and we hope you will take pride in being a member of our team This book, however, should not be considered a complete statement of company policy. Consequently, Mr. Dominic's at the Lake and Mr. Dominic's on Main management reserves the right to change, revise, add to, or delete any information in this handbook it deems appropriate....

The information contained in this handbook applies to all employees of Mr. Dominic's at the Lake and Mr. Dominic's on Main.

MRD000007, Beckles Decl. Ex. 39 (emphasis added).

(EEOC SOF ¶ 77.) Defendants respond by disputing the claims, stating again that "The EEOC fails to lay a foundation, and mischaracterizes testimony and evidence. Green Lantern and Pullman had separate management. Tachin Decl. ¶¶ 17–27."

41

(Defs.' Resp. ¶ 77.) Once again, Defendants do not dispute the factual assertion, only the legal conclusion to be drawn from it.

The EEOC continues "78. The Employee Manual includes policies on, among other things, 'Employment of Relatives' concerning the hiring relatives, 'Employment Termination,' and Defendants' 'Disciplinary Program.' MRD000010-12, Beckles Decl. Ex. 39." (EEOC SOF ¶ 78.) Defendants respond with "The EEOC fails to establish any foundation, and mischaracterizes testimony and evidence. Green Lantern and Pullman had separate management. Tachin Decl. ¶¶ 17–27." (Defs.' Resp. ¶ 78.) Again, Defendants dispute not the factual assertion, but the legal conclusion to be drawn from it.

### Personnel Forms

EEOC moves to discuss Warren's testimony regarding providing forms to newly-hired employees: "79. Office Manager Patricia Warren testified that she provided a packet of employment forms for all newly hired employees at Mr. Dominic's on Main and Mr. Dominic's at the Lake, including the New York State Notice of Acknowledgment of Pay Rate and Payday Notice for Hourly Rate Employees (NYS Form LS 54) (the "Pay Notice"). Warren Dep. 120:18–22, Beckles Decl. Ex. 13." (EEOC SOF ¶ 79.)

> The EEOC mischaracterizes the cited testimony. Ms. Warren did not testify that she provided a packet of employment forms to newly hired employees as the EEOC claims and instead testified that the general manager of Green Lantern or Pullman provided an employee manual. Warren Testimony 118:18–25 (Beckles Decl. Ex. 13 [Dkt 91-3 p. 61].)

(Defs.' Resp. ¶ 79.) Ms. Warren testified on this point as follows:

Q. . . . And you indicated that the employee manual was provided to Mr. Dominic's employees; is that right?

A. It was, yes.

Q. When was it provided to them?

A. On the day of their hire.

Q. In hard copy?

A. Yes. A packet is given to them with the IT 2104, the federal forms, the LS 54, the–there's four forms that we do with that. So it's like a whole packet. And then we also give them a sheet for their availability, the I-9.

Q. Who was responsible for providing the employee manual to new hires?

A. The general manager.

(Warren Dep. 120:11–25.)

> EEOC then discusses the pay notices for the various employees:
>
> 80. The Pay Notices for Charging Party Rachel Clifford, Claimant Alyssa Bean, Anthony Barbone, and Jenna Kavanagh each listed Pullman Associates, LLC and Green Lantern Inn, Inc. under the header "Employer Information." Office Manager Patricia Warren prepared each of these forms even though Clifford, Bean, Barbone, and Kavanagh worked at Mr. Dominic's on Main. Beckles Decl. Exs. 7, 17, 19, 25.

(EEOC SOF ¶ 80.) Defendants reply by disputing this: "The EEOC did not provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible." (Defs.' Resp. ¶ 80.) The exhibits came from Defendants. (EEOC Reply Mem. of Law 3.) As stated above regarding other records Defendants have disputed, the undersigned makes the same finding of authenticity based on the factors discussed in *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000).

*Payroll Practices*

EEOC attempts to outline the common ownership aspect of the entities:

81. According to Warren, because of Green Lantern's and Pullman Associates' "common ownership of corporations," Green Lantern and Pullman Associates lessened their payroll service fees and liability by "combin[ing] companies and pay[ing payroll] out of one corporation." Warren Dep. 154:19–155:20, Beckles Decl. Ex. 13.

(EEOC SOF ¶ 81.) Defendants respond by stating that a third-party deals with payroll: "The EEOC mischaracterizes testimony and evidence. At all times, the defendants each ran their payroll separately using the services of a third-party company, USA Payroll. Tachin Decl. ¶¶ 37–36, Exs. C and D." (Defs.' Resp. ¶ 80.) Ms. Warren's testimony on this point is as follows:

A. Because if there's common ownership of corporations, you can–to basically lessen your payroll liability as far as service fees, you can combine companies and pay out from one corporation.

Q. And is that what Pullman and Green Lantern do?

A. Correct. So Pullman is–they're separate entities, but because they allow us to combine payroll–so if I had five corporations, and I owned all of them, I can run one payroll, but then you make entries to expense it to the other company on both sets of books. So realistically Green Lantern does pay their own payroll, it's just run through one system.

(Warren Dep. 154:19–155:8.)

82. To "pay out from one corporation," Green Lantern and Pullman Associates executed payroll loans from one corporate entity to the other and denoted the loans on Green Lantern's and Pullman Associates' 2018 and 2019 Profit & Loss Statements and Balance Sheets, that Warren created, as "Gross Wages – Employee Leasing-Other", "Payroll Payable-MrD Lake", "Mr. Dominic's at the Lake Pay/Rec", "P/R receivable", "Gross Wages (Lake)", and "Gross Wages (Main)" line item entries. The line item entries reflected the payroll costs expensed and due to the other entity. Warren Dep. 151:24–152:23, 153:25–155:20, 157:13–25, 159:24–161:2, 162:23–163:11, 164:19–165:25, 167:5–168:19, 169:6–18, Beckles Decl. Ex. 13; MRD000558, Beckles Decl. Ex. 40, MRD000561,

Beckles Decl. Ex. 41, MRD000608, Beckles Decl. Ex. 42, MRD000615, Beckles Decl. Ex. 43.

(EEOC SOF ¶ 82.) Defendants reply by disputing the allegation, "The EEOC mischaracterizes testimony and evidence. At all times, the defendants each ran their payroll separately using the services of a third-party company, USA Payroll. Tachin Decl. ¶¶ 37–36, Exs. C and D." (Defs.' Resp. ¶ 82.) This is the same response for the same issue as in paragraph 80 and will be for paragraph 83. Defendants dispute not the factual assertion, but the legal conclusions to be drawn.

EEOC continues "83. Green Lantern's and Pullman Associates' Owner John Tachin reviewed the profit & loss statements that Warren prepared to 'watch [and] make sure [] spending isn't out of control on the payroll.' Tachin Dep. 258:18-21, Beckles Decl. Ex. 1." (EEOC SOF ¶ 83.) Defendants respond with "The EEOC mischaracterizes the testimony, which speaks for itself. In addition, at all times, the defendants each ran their payroll separately using the services of a third-party company, USA Payroll. Tachin Decl. ¶¶ 37–36, Exs. C and D." (Defs.' Resp. ¶ 83.)

***Website and Facebook Accounts***

EEOC then moves on to the website for these entities:

> 84. Green Lantern and Pullman Associates maintained a website, www.mrdominics.com, that marketed both Mr. Dominic's on Main and Mr. Dominic's at the Lake restaurants, including separate links for the two restaurant locations and a single link to purchase coupons and gift certificates for use at the restaurants. EEOC0000274, Beckles Decl. Ex. 5.

(EEOC SOF ¶ 84.) Defendants respond by stating "The EEOC failed to provide a foundation for the alleged evidence supporting the allegations in this paragraph and

it is inadmissible." (Defs.' Resp. ¶ 84.) Exhibit 5 was authenticated by Nairuby Beckles who personally created the screenshot.

> EEOC then discusses the Facebook accounts for the entities.

> 85. Green Lantern and Pullman Associates also maintained Facebook accounts for both restaurants. General managers used the Facebook accounts to promote the restaurants' specials and make other announcements to the public, including Green Lantern's and Pullman Associates' policy of honoring gift certificates purchased at either restaurant location. Barbone Dep. 133:22–134:13, Beckles Decl. Ex. 6; Warren Dep. 149:25–150:3, Beckles Decl. Ex. 13; Beckles Decl. Exs. 8, 9, 44.

(EEOC SOF ¶ 85.) Defendants dispute this, "The EEOC failed to provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. The cited testimony does not support the allegations in this paragraph." (Defs.' Resp. ¶ 85.) Exhibit 8 was authenticated by Nairuby Beckles who personally created the screenshot.

EEOC discusses postings on these accounts "86. On March 4, 2021 at 3:19 PM, Green Lantern and Pullman Associates announced the closing of Mr. Dominic's on Main on its Facebook account, inviting customers to visit "our Original Location: MR. DOMINIC'S AT THE LAKE 4699 Lake Avenue Rochester, NY 14612[.]" Beckles Decl. Ex. 9." (EEOC SOF ¶ 86.) Defendants again dispute and allege that "The EEOC failed to provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible." (EEOC SOF ¶ 86.) Exhibit 9 was authenticated by Nairuby Beckles who personally created the screenshot.

### Charles A. Terviso, CPA

EEOC then discusses the hiring of Charles A. Terviso, CPA:

> 87. In 2019 and 2020, Green Lantern and Pullman Associates hired the same professional tax accountant, Charles A. Terviso, CPA, to prepare their federal and state tax returns for Mr. Dominic's on Main and Mr. Dominic's at the Lake. Warren Dep. 30:21-31:11, Beckles Decl. Ex. 13; MRD000567, Beckles Decl. Ex. 2; MRD000580, Beckles Decl. Ex. 3; MRD000597, Beckles Decl. Ex. 4; MRD000616, Beckles Decl. Ex. 10; MRD000631, Beckles Decl. Ex. 11; MRD000652, Beckles Decl. Ex. 12.

(EEOC SOF ¶ 87.) Defendants dispute this, "The EEOC failed to provide a foundation for the alleged evidence supporting the allegations in this paragraph and it is inadmissible. The cited testimony does not support the allegations in this paragraph. In addition, tax returns dated 2019 and 2020 are subsequent to any claims asserted in this action and not relevant to the claims or defenses herein." (Defs.' Resp. ¶ 87.) The testimony cited supports EEOC's assertion, and Defendants' dispute over the relevance of the facts does not create a material issue of fact precluding summary judgment.

### *USA Payroll*

EEOC discusses USA Payoll: "88. Green Lantern and Pullman Associates used the same payroll service provider, USA Payroll, for Mr. Dominic's on Main and Mr. Dominic's at the Lake. Warren Dep. 155:10-11; Beckles Decl. Exs. 16, 18, 20, 22, 26, 29, 33. (EEOC SOF ¶ 88.) Defendants state that "88. In response to paragraph 88, Defendants admit both defendants previously utilized the same payroll service provider, USA Payroll. Defendants dispute that Green Lantern currently maintains any payroll, as it no longer conducts any business." (Defs.' Resp. ¶ 88.) That dispute is immaterial; accordingly, the undersigned finds that Defendants' objection should be disregarded. *See Baity*, 51 F. Supp. 3d at 418 (noting that statements that "speak[]

past . . . asserted facts" or are "immaterial" may be disregarded); *Lee*, 520 F. Supp. 3d at 200 (same).

### Point-of-Sale Systems

EEOC then discusses the similar point-of-sale systems used by the two entities. "89. Green Lantern and Pullman Associates used the same point-of-sale system and point-of-sale technical support provider, Xenois, at Mr. Dominic's on Main and Mr. Dominic's at the Lake. Warren Dep. 33:23–34:5, Beckles Decl. Ex. 13." (EEOC SOF ¶ 89.) Defendants dispute this: "The cited testimony does not support the allegations in this paragraph as it does not specify whether Green Lantern or Pullman used the referenced system and support provider." (Defs.' Resp. ¶ 89.) Ms. Warren's testimony supports the assertion that "her" tech support was from Xenois. (Warren Dep. 33:23–24.) She responded to a question indicating that Mr. Dominic's used Xenois for tech support. (*Id.* 35:2–3.) Her testimony did not specify if both the Green Lantern and Pullman entities used it for support.

### The Complaint in this Action

EEOC then discusses the complaint:

90. On September 23, 2019, EEOC commenced this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Charging Party Rachel Clifford and another female employee who were adversely affected by such practices. Dkt. 1.

(EEOC SOF ¶ 90.) Defendants dispute this stating "The complaint in this action is not admissible evidence for purposes of plaintiff's motion for summary judgment." (Defs.' Resp. ¶ 90.) EEOC's assertion is supported by the evidence. The undersigned

finds that the complaint is competent to show that the complaint was filed and what is alleges.

EEOC also discusses the second amended complaint:

91. As set forth more fully in the Second Amended Complaint (Dkt. 55), the EEOC alleges that Defendants Green Lantern and Pullman Associates operate as an integrated enterprise, have violated Title VII by subjecting Clifford and other similarly aggrieved female employees to a hostile work environment based on their sex. The Commission further alleges that Defendants constructively discharged Rachel Clifford and another female employee by creating and maintaining an intolerable work environment, and that Defendants discharged another female employee who objected to and complained about the hostile work environment. Dkt. 55.

(EEOC SOF ¶ 91.) Again Defendants dispute this "The second amended complaint filed in this action does not constitute admissible evidence for purposes of plaintiff's motion for summary judgment."(Defs.' Resp. ¶ 91.) EEOC's assertion of fact is supported by the evidence. The second amended complaint is competent to show that the it was filed and what is alleges.

### Arnold Petralia, Esq.

The final statement put forth by EEOC is:

92. Since August 4, 2020, Arnold Petralia, Esq. has represented Green Lantern in this action. Dkt. 20. Since EEOC filed its Second Amended Complaint (Dkt. 55) on November 16, 2020 naming Pullman Associates as a Defendant, Mr. Petralia has continued to represent both Green Lantern and Pullman Associates in this action. Dkt. 55.

(EEOC SOF ¶ 92.) Defendants respond with "92. In response to paragraph 92, defendants admit they have been represented by the same attorneys in this action."

(Defs.' Resp. ¶ 92.)

***EEOC's Response to Defendant's Additional Material Facts***

> As an initial matter, EEOC claims that Defendants' Statement conflicts with Local Rule 56(a)(2), which provides that: "The papers opposing a motion for summary judgment shall include … if necessary, additional paragraphs containing a short and concise statement of **additional material facts as to which it is contended there exists a genuine issue to be tried**." EEOC claims that "the 'facts' are either duplicative of those in Plaintiff's Local Rule 56 Statement of Material Facts (ECF No. 91-2) ("Pl. 56(a)") (*compare, e.g.*, Pl. 56(a) ¶ 3 *with* Defs. 56(a) ¶ 12), or immaterial to the issues raised in Plaintiff's Partial Motion for Summary Judgment, ECF Nos. 91 ("Pls. MSJ") & 91-1 ("Pls. MOL") and simply irrelevant (*see, e.g.*, Defs. 56(a) ¶¶ 4, 24). Because Defendants' Statement does not comply with Local Rule 56(a), the Court should reject it."

(EEOC's Resp. to Defs.' Statement of Additional Material Facts ("EEOC's Resp."), ECF No. 117-1.) While some of the material facts are duplicative, a number are not, furthermore, some facts are objected to by EEOC. Accordingly, the undersigned will review Defendants' "Additional Material Facts." (ECF No. 106-13.)

> 1. Green Lantern and Pullman have at all times operated as separate entities and separate employers. (*See* Tachin Decl., ¶ 2).

(Defs.' Additional Material Facts ("Defs.' AMF"), ¶ 1, ECF No. 106-13.)

> Response: Plaintiff objects that this assertion violates Local Rule 56(a)(2) and Fed. R. Civ. P. 56(c) because it consists of a legal conclusion as to the ultimate issue of Defendants' Motion for Partial Summary Judgment, not a statement of material fact "as to which it is contended there exist a genuine issue to be tried." Accordingly, no admission or denial is required and, because Paragraph 1 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 1.) The Court agrees with EEOC that Defendants' objection should be disregarded: the ultimate legal question is whether the two entities should be treated as separate entities, or as one entity.

EEOC does not dispute facts 2,[7] 4 and 5:

2. John Tachin formed Pullman, a limited liability company, in 2011 to take over the ownership of his wife's family business, operating the restaurant Mr. Dominic's at the Lake in the Charlotte, New York neighborhood. (Tachin Decl. ¶¶ 3–4).

4. The Charlotte restaurant was previously owned by Tachin's father-in-law as a family business in operation since 1976. (Tachin Decl. ¶ 4).

5. Since Pullman's formation, Tachin has been its only member and owner. (Tachin Decl. ¶ 6, Ex. A).

(Defs.' AMF ¶¶ 2, 4–5.)

6. Pullman's only business function has been to operate the restaurant known as Mr. Dominic's at the Lake located at 4699 Lake Ave., Rochester, New York 14612 (referred to herein as the "Charlotte restaurant"). (Tachin Decl. ¶ 7).

(Defs.' AMF ¶ 6) EEOC's lengthy response is as follows:

Response: Plaintiff objects to this assertion as contradicted by specific evidence in the record, including Tachin's prior deposition testimony and Defendants' business records. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 263:6–11 (regarding "Payroll Payable – MrD Lake," "I have, you know, loaned money to my other businesses till they're up and running and then pay it back."); *see also* Beckles Decl. Ex. 13 (Warren Dep.) 160:12–161:3 & 164:13–166:7 (Pullman Associates' $154,692 loan from Mr. Dominic's on Main & $16,000 loan to cover payroll costs) & 166:17–167:3 (Pullman loaning money to 4699 LLC, Jetset, and KAT Development, all owned by Tachin). Plaintiff further objects that Paragraph 7 to the July 30, 2021 Declaration of John Tachin ("Tachin Decl.") cannot create a disputed material fact because this assertion is vague, self-serving, and contradicted by Tachin's prior deposition testimony and documents in the record. *See Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015); *Jeffrey v. Montefiore Med. Ctr.*, No. 11 Civ. 6400, 2013 WL 5434635, at *15 (S.D.N.Y. Sept. 27, 2013) (collecting cases).

---

[7] Defendants' submission appears to skip paragraph 3 in its numbering.

> Accordingly, because Paragraph 6 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 6.) A witness cannot file an affidavit that contradicts the witness's earlier deposition testimony. Further, the ultimate legal issue is whether the two entities are separate, or one. That issue is for the undersigned to decide (if there are no material issues of fact precluding summary judgment) and the assertions in paragraph six of Defendant's statement are not assertions of fact.

> 7. Pullman rents the restaurant premises from 4699 Lake Avenue, LLC, a New York limited liability company. (Tachin Decl. ¶ 8).

(Defs.' AMF ¶ 7.) EEOC does not dispute this statement fully, rather:

> Response: Plaintiff does not dispute this assertion solely for purposes of summary judgment. However, Plaintiff affirmatively asserts that Tachin owns the property at 4699 Lake Avenue (*see* Beckles Decl. Ex. 1 (Tachin Dep.) at 12:10–12), and is the sole member of 4699 Lake Avenue, LLC. Id. at 44:18–25; see also Defs. 56(a) ¶¶ 20–22 & Pl. 56(a) ¶¶ 20–22 (admitting).

> 8. Mr. Tachin purchased Green Lantern, a decades-old corporation, in 2014 with Gary Polisseni. (Tachin Decl. ¶ 9).

> 9. On May 27, 2014, Mr. Tachin filed an assumed name certificate listing Mr. Dominic's On Main as the assumed name for Green Lantern. (Tachin Decl. ¶ 10, Ex. B).

> 10. Green Lantern operated a restaurant and banquet facility in Fairport, New York, in a historical building formerly known as the Green Lantern Inn, and subsequently as Mr. Dominic's on Main, located at 1 Church Street East, Fairport, New York, 14450 (referred to herein as the "Fairport restaurant"). (Tachin Decl. ¶ 11).

> 11. While Mr. Tachin and Mr. Polisseni were both shareholders of Green Lantern, Mr. Tachin purchased Mr. Polisseni's interest in Green Lantern in June 2017. (Tachin Decl. ¶ 12).

> 12. Since that time, Mr. Tachin has been the sole shareholder, officer, and directoror Green Lantern. (Tachin Decl. ¶ 13).

13. Green Lantern closed the restaurant Mr. Dominic's on Main in August 2020 for financial reasons related to the Covid-19 pandemic, and Green Lantern is not currently engaged in any business. (Tachin Decl. ¶ 14).

14. From 2014 until the restaurant's closure in August 2020, Green Lantern's only business was to operate the Fairport restaurant and banquet facility. (Tachin Decl. ¶ 15).

Response: Plaintiff objects to this assertion as contradicted by specific evidence in the record, including Tachin's prior deposition testimony and Defendants' business records. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 263:6-11 (regarding "Payroll Payable – MrD Lake," "I have, you know, loaned money to my other businesses till they're up and running and then pay it back."); *see also* Beckles Decl. Ex. 13 (Warren Dep.) 160:12–161:3 & 164:13–166:7 (Pullman Associates' $154,692 loan from Mr. Dominic's on Main & $16,000 loan to cover payroll costs) & 166:17–167:3 (Pullman loaning money to 4699 LLC, Jetset, and KAT Development, all owned by Tachin). Plaintiff further objects that Paragraph 15 to the July 30, 2021 Declaration of John Tachin cannot create a disputed material fact because this assertion is vague, self-serving, and contradicted by Tachin's prior deposition testimony and documents in the record. *See Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015); *Jeffrey v. Montefiore Med. Ctr.*, No. 11 Civ. 6400, 2013 WL 5434635, at *15 (S.D.N.Y. Sept. 27, 2013) (collecting cases).

Accordingly, because Paragraph 14 is not supported by evidence that can establish the presence or absence of a material fact, the Court will disregard Defendants' assertion made in paragraph 14. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

15. During the time it was operating, Green Lantern rented the restaurant space in Fairport from Speakeasy Properties, LLC ("Speakeasy"), the owner of the premises. (Tachin Decl. ¶ 16).

16. At all times Speakeasy has had two members, Gary Polisseni and John Tachin. (Tachin Decl. ¶ 16).

### *Defendants' Management*

EEOC objects to Defendants' heading under Defs.' AMF paragraph

Response: Plaintiff objects to this assertion ["Defendants Had Separate Management"] on the grounds that it consists of arguments,

characterizations, and legal conclusions, and is not supported by citation to any record evidence in violation of Local Rule 56(a)(2) and Fed. R. Civ. P. 56(c).

(EEOC Resp. at 6.) The Court notes that this is a heading in Defendants' Additional

Material Facts and not a factual assertion supported by a citation to evidence.

17. At all times, different managers were responsible for managing the day-to-day operations of Mr. Dominic's at the Lake and Mr. Dominic's on Main. (Tachin Decl. ¶ 17.)

18. The restaurants are located approximately twenty miles apart, and it is approximately a thirty-minute drive between the two locations, making it necessary to have separate general managers to oversee the daily operations of each restaurant. (Tachin Decl. ¶18.)

19. From June 2014 through the present, Andrea Bullock ("Bullock") has been the General Manager of Pullman d/b/a Mr. Dominic's at the Lake, responsible for the daily operations of the Charlotte restaurant, including hiring and firing employees, disciplining employees, inventory, and sanitation. (Tachin Decl. ¶ 19.)

20. Ms. Bullock has only worked at Mr. Dominic's at the Lake and did not have any responsibilities at Mr. Dominic's on Main. (Tachin Decl. ¶ 20.)

21. While it was operating, Green Lantern d/b/a Mr. Dominic's on Main always had its own manager who only worked at the Fairport restaurant. (Tachin Decl. ¶ 21.)

22. Anthony Barbone was the General Manager of Green Lantern in Fairport from the time that it first opened in 2014 through August 2018. (Tachin Decl. ¶ 22.)

(Defs.' AMF ¶¶ 17–22.) EEOC only objected on materiality grounds.

23. Mr. Barbone was responsible for the daily operation of the Green Lantern restaurant, including hiring and firing employees, disciplining employees, inventory, and sanitation. (Tachin Decl. ¶ 23.)

(Defs.' AMF 23.)

Response: Plaintiff objects to this assertion as duplicative of Pl. 56(a) ¶ 44, but otherwise does not dispute this assertion solely for purposes of summary judgment. However, Plaintiff affirmatively asserts that

Defendants admitted Pl. 56(a) ¶ 44, which reads, "Although Barbone could hire, fire, set rate of pay, determine work hours, and discipline employees, Barbone could not give employees pay raises 'without consultation with Tachin.' Barbone also consulted with Tachin concerning employee discipline." *See* Defs. 56(a) Opp. ¶ 44.

(EEOC Resp. ¶ 23.)

24. Green Lantern provided Mr. Barbone an apartment where he lived over the restaurant in Fairport in the same building. (Tachin Decl. ¶ 24).

25. During that time period, Mr. Barbone never worked at Pullman's Charlotte restaurant and did not have any responsibilities at the Charlotte restaurant. (Tachin Decl. ¶ 25).

(EEOC Resp. ¶ 24–25.) EEOC did not dispute the fact asserted in paragraph 24, other

than its immateriality, but did object to paragraph 25:

Response: Plaintiff objects to this assertion as contradicted by evidence in the record; specifically, the State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as Barbone's employers (*see* Beckles Decl. Ex. 7); and Defendants' payroll register listing Barbone as employed by "Mr. Dominic's at the Lake." *See* Beckles Decl. Ex. 16. Plaintiff does not otherwise dispute this immaterial assertion solely for purposes of summary judgment.

(EEOC Resp. ¶ 25.)

26. Also during this time period, Jenna Kavanaugh was the Assistant Manager of the Green Lantern restaurant in Fairport, and was the direct supervisor for all of the servers, bussers, dishwashers, employees preparing salads, and hostesses, including all of the complainants in this lawsuit. (Tachin Decl. ¶ 26).

27. Ms. Kavanaugh did not have any responsibilities at the Pullman restaurant in Charlotte. (Tachin Decl. ¶ 27).

(Defs.' AMF ¶¶ 26–27.) EEOC disputes only the materiality of paragraph 26, but

regarding paragraph 27 states:

Response: Plaintiff affirmatively asserts that characterizing Mr. Dominic's at the Lake as "the Pullman restaurant" is unsupported by

evidence in the record and implies a legal conclusion as to the ultimate issue of Plaintiff's Motion for Partial Summary Judgment.

Plaintiff further notes that Defendants have not cited any record evidence that Mr. Dominic's at the Lake referred to itself, either internally or externally, as "the Pullman restaurant."

However, Plaintiff does not dispute, for summary judgment purposes only, the immaterial assertion that Ms. Kavanaugh did not have any responsibilities at Mr. Dominic's at the Lake.

The Court agrees that the evidence does not support calling the restaurant in Charlotte near the lake "the Pullman restaurant."

### *Defendants' Employee Rosters*

The next heading in Defendants' Additional Material Facts is this: "Defendants Had Separate Employee Rosters." EEOC objects to the assertion, (EEOC Resp. at 8), which the Court notes is only a heading, not an assertion of fact supported by a citation to evidence.

28. The General Managers at Pullman and Green Lantern at all times hired separate employees to work at each restaurant. (Tachin Decl. ¶¶ 27, 42, Ex. C and D).

Response: Plaintiff objects that Paragraphs 27 and 42 to the July 30, 2021 Declaration of John Tachin cannot create a disputed material fact because these assertions are vague, self-serving, and contradicted by Tachin's prior deposition testimony and documents in the record. *See Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015); *Jeffrey v. Montefiore Med. Ctr.*, No. 11 Civ. 6400, 2013 WL 5434635, at *15 (S.D.N.Y. Sept. 27, 2013) (collecting cases); *see also* Beckles Decl. Ex. 1 (Tachin Dep.) 114:12–16 (Dowlatt worked one evening at Mr. Dominic's on the Lake during suspension period) & Beckles Decl. Ex. 22 (during corresponding time period, Dowlatt was paid for seven hours of work by "DBDT: Mr. Dominic's on Main"); Beckles Decl. Ex. 30 (letter on Mr.Dominic's on the Lake letterhead, representing to the New York State Department of Labor that Cavuoto was employed at "our other location" and was "transferred to the Lake location."); Beckles Decl. Ex. 13 (Warren Dep.) 147:11–14 (regarding Cavuoto, "She was a server at Mr. Dominic's on Main. She

was pregnant and couldn't do the stairs anymore, so they asked the manager here if she could come here [Mr. Dominic's on the Lake] and work, and she did."); Beckles Decl. Ex. 29 (payroll records recording Cavuoto as an employee of Mr. Dominic's at the Lake both before and after her transfer); Beckles Decl. Ex. 15 (Bardanis Dep.) 7:14–19 (training at other location); Beckles Decl. Ex. 31 (Connors Dep. 8:9–11) (worked "here and there at the Charlotte location") & 13:11–19 (worked at Charlotte location "Basically whenever they asked for help"; and worked "closer to 10" shifts at Charlotte location).

Paragraph 28 hereto and Tachin Decl. ¶¶ 27 & 42 are also contradicted by the State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers. *See* Beckles Decl. Exs. 7 (Barbone); 17 (Clifford); 19 (Kavanaugh); 25 (Bean); 28 (Cavuoto) (listing "Pullman Associates, Inc." d/b/a "Mr. Dominic's at the Lake"); 32 (Connors) (same as Cavuoto).

Finally, Tachin Decl. ¶ 27 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may … simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted). Tachin's declaration sets forth no facts showing that he is competent to testify as to the daily staffing of servers at the two Mr. Dominic's restaurants—and indeed, contradicts his competence to testify as to the restaurants' day-to-day operations and supervision of staff (*see* Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which employees worked at any given time. *See, e.g.*, Beckles Decl. Ex. 1 (Tachin Dep.) 67:17–20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3–9 (duties as general manager).

Accordingly, because Paragraph 28 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 28.) EEOC's response is well-taken and shows that Defendants' AMF

paragraph 28 is argument more than it is an assertion of a fact. The legal conclusions

to be drawn from the facts are up to the Court in this motion.

29. The management and employees at each restaurant worked separately at each location. (Tachin Decl. ¶ 28).

Response: Plaintiff objects that the cited paragraph of the Tachin Declaration does not present genuine issues of material fact because it consists only of "[v]ague assertions supported only by self-serving statements," and so does not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c); *see also Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015). Plaintiff further objects that this assertion consists of a legal conclusion and as contradicted by specific evidence in the record, including Tachin's prior deposition testimony. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 114:12–16 (Dowlatt worked one evening at Mr. Dominic's on the Lake during suspension period) & Beckles Decl. Ex. 22 (during corresponding time period, Dowlatt was paid for seven hours of work by "DBDT: Mr. Dominic's on Main"); Beckles Decl. Ex. 30 (letter on Mr. Dominic's on the Lake letterhead, representing to the New York State Department of Labor that Cavuoto was employed at "our other location" and was "transferred to the Lake location."); Beckles Decl. Ex. 13 (Warren Dep.) 147:11–14 (regarding Cavuoto, "She was a server at Mr. Dominic's on Main. She was pregnant and couldn't do the stairs anymore, so they asked the manager here if she could come here [Mr. Dominic's on the Lake] and work, and she did."); Beckles Decl. Ex. 29 (payroll records recording Cavuoto as an employee of Mr. Dominic's at the Lake both before and after her transfer); Beckles Decl. Ex. 15 (Bardanis Dep.) 7:14–19 (training at other location); Beckles Decl. Ex. 31 (Connors Dep. 8:9–11) (worked "here and there at the Charlotte location") & 13:11- 19 (worked at Charlotte location "Basically whenever they asked for help"; and worked "closer to 10" shifts at Charlotte location). Paragraph 32 hereto and Tachin Decl. ¶ 28 is also contradicted by the State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers. *See* Beckles Decl. Exs. 7 (Barbone); 17 (Clifford); 19 (Kavanaugh); 25 (Bean); 28 (Cavuoto) (listing "Pullman Associates, Inc." d/b/a "Mr. Dominic's at the Lake"); 32 (Connors) (same as Cavuoto).

Finally, Tachin Decl. ¶ 28 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge … and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may . . . simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted).

Tachin's declaration sets forth no facts showing that he is competent to testify as to the scheduling of servers, banquet staff and dishwashers at the two Mr. Dominic's restaurants—and indeed, contradicts his competence to testify as to the restaurants' day-to-day staffing (*see* Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which employees worked at any given time. *See, e.g.*, Beckles Decl. Ex. 1 (Tachin Dep.) 67:17–20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3–9 (duties as general manager).

Accordingly, because Paragraph 29 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 29.) As stated numerous times above with regard to other assertions in Defendants' AMF, Defendants' assertion in paragraph 29 is more legal argument than a factual statement. The Court will draw the legal conclusions from the undisputed facts on this motion.

30. Pullman hired its own servers and kitchen staff who only worked at the Charlotte restaurant and did not work for Green Lantern. (Tachin Decl. ¶ 29).

Response: Plaintiff objects that the cited paragraph of the Tachin Declaration does not present genuine issues of material fact because it consists only of "[v]ague assertions supported only by self-serving statements," and so does not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c); *see also Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015).

Plaintiff further objects that this assertion consists of a legal conclusion and as contradicted by specific evidence in the record, including Tachin's prior deposition testimony. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 114:12-16 (Dowlatt worked one evening at Mr. Dominic's on the Lake during suspension period) & Beckles Decl. Ex. 22 (during corresponding time period, Dowlatt was paid for seven hours of work by "DBDT: Mr. Dominic's on Main"); Beckles Decl. Ex. 30 (letter on Mr. Dominic's on the Lake letterhead, representing to the New York State Department of Labor that Cavuoto was employed at "our other location" and was "transferred to the Lake location."); Beckles Decl. Ex. 13 (Warren Dep.) 147:11–14 (regarding Cavuoto, "She was a server at Mr. Dominic's on

Main. She was pregnant and couldn't do the stairs anymore, so they asked the manager here if she could come here [Mr. Dominic's on the Lake] and work, and she did."); Beckles Decl. Ex. 29 (payroll records recording Cavuoto as an employee of Mr. Dominic's at the Lake both before and after her transfer); Beckles Decl. Ex. 15 (Bardanis Dep.) 7:14–19 (training at other location); Beckles Decl. Ex. 31 (Connors Dep. 8:9–11) (worked "here and there at the Charlotte location") & 13:11–19 (worked at Charlotte location "Basically whenever they asked for help"; and worked "closer to 10" shifts at Charlotte location). Paragraph 33 hereto and Tachin Decl. ¶ 29 is also contradicted by the State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers. *See* Beckles Decl. Exs. 7 (Barbone); 17 (Clifford); 19 (Kavanaugh); 25 (Bean); 28 (Cavuoto) (listing "Pullman Associates, Inc." d/b/a "Mr. Dominic's at the Lake"); 32 (Connors) (same as Cavuoto).

Finally, Tachin Decl. ¶ 29 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may … simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted). Tachin's declaration sets forth no facts showing that he is competent to testify as to the scheduling of servers, banquet staff and dishwashers at the two Mr. Dominic's restaurants—and indeed, contradicts his competence to testify as to the restaurants' day-to-day staffing (see Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which employees worked at any given time. *See*, *e.g.*, Beckles Decl. Ex. 1 (Tachin Dep.) 67:17-20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3–9 (duties as general manager).

Accordingly, because Paragraph 30 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 30.) The Court repeats its response to the statement in paragraph 29:

Defendants' assertion is legal argument.

60

31. Green Lantern hired its own servers and kitchen staff who only worked at the Fairport restaurant and did not work for Pullman. (Tachin Decl. ¶ 31).

Response: Plaintiff objects that the cited paragraph of the Tachin Declaration does not present genuine issues of material fact because it consists only of "[v]ague assertions supported only by self-serving statements" and so does not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c); *see also Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015). Plaintiff further objects that this assertion consists of a legal conclusion and as contradicted by specific evidence in the record, including Tachin's prior deposition testimony. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 114:12–16 (Dowlatt worked one evening at Mr. Dominic's on the Lake during suspension period) & Beckles Decl. Ex. 22 (during corresponding time period, Dowlatt was paid for seven hours of work by "DBDT: Mr. Dominic's on Main"); Beckles Decl. Ex. 30 (letter on Mr. Dominic's on the Lake letterhead, representing to the New York State Department of Labor that Cavuoto was employed at "our other location" and was "transferred to the Lake location."); Beckles Decl. Ex. 13 (Warren Dep.) 147:11–14 (regarding Cavuoto, "She was a server at Mr. Dominic's on Main. She was pregnant and couldn't do the stairs anymore, so they asked the manager here if she could come here [Mr. Dominic's on the Lake] and work, and she did."); Beckles Decl. Ex. 29 (payroll records recording Cavuoto as an employee of Mr. Dominic's at the Lake both before and after her transfer); Beckles Decl. Ex. 15 (Bardanis Dep.) 7:14–19 (training at other location); Beckles Decl. Ex. 31 (Connors Dep. 8:9–11) (worked "here and there at the Charlotte location") & 13:11–19 (worked at Charlotte location "Basically whenever they asked for help"; and worked "closer to 10" shifts at Charlotte location); see also State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers (Beckles Decl. Exs. 7 (Barbone); 17 (Clifford); 19 (Kavanaugh); 25 (Bean); 28 (Cavuoto) (listing "Pullman Associates, Inc." d/b/a "Mr. Dominic's at the Lake"); 32 (Connors) (same as Cavuoto)).

Finally, Tachin Decl. ¶ 31 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may . . . simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted).

Tachin's declaration sets forth no facts showing that he is competent to testify as to the scheduling of servers, banquet staff and dishwashers at the two Mr. Dominic's restaurants—and indeed, contradicts his competence to testify as to the restaurants' day-to-day staffing (*see* Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which employees worked at any given time. *See, e.g.*, Beckles Decl. Ex. 1 (Tachin Dep.) 67:17-20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3–9 (duties as general manager).

Accordingly, because Paragraph 31 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 31.) As discussed above, particularly with regard to the accommodations for the pregnant Ms. Cavuoto, employees worked at both locations. The legal conclusions to be drawn from this and other undisputed facts are for the Court to determine.

32. Green Lantern also hired banquet staff to assist with special events in the banquet facilities at the Fairport restaurant. (Tachin Decl. ¶ 31).

33. There were no employees who worked for both restaurants simultaneously. (Tachin Decl. ¶ 32).

(Defs.' AMF Resp. ¶¶ 32–33.)

Response: Plaintiff objects that the cited paragraph [¶ 33] of the Tachin Declaration does not present genuine issues of material fact because it consists only of "[v]ague assertions supported only by self-serving statements," and so does not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c); *see also Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015). Plaintiff further objects that this assertion consists of a legal conclusion and as contradicted by specific evidence in the record, including Tachin's prior deposition testimony. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 114:12–16 (Dowlatt worked one evening at Mr. Dominic's on the Lake during suspension period) & Beckles Decl. Ex. 22 (during corresponding time period, Dowlatt was paid for seven hours of work by "DBDT: Mr. Dominic's on Main"); Beckles Decl. Ex. 30 (letter on Mr. Dominic's on the Lake letterhead, representing to the New York State Department of Labor that Cavuoto was employed at "our other location"

and was "transferred to the Lake location."); Beckles Decl. Ex. 13 (Warren Dep.) 147:11–14 (regarding Cavuoto, "She was a server at Mr. Dominic's on Main. She was pregnant and couldn't do the stairs anymore, so they asked the manager here if she could come here [Mr. Dominic's on the Lake] and work, and she did."); Beckles Decl. Ex. 29 (payroll records recording Cavuoto as an employee of Mr. Dominic's at the Lake both before and after her transfer); Beckles Decl. Ex. 15 (Bardanis Dep.) 7:14–19 (training at other location); Beckles Decl. Ex. 31 (Connors Dep.) 8:9–11 (worked "here and there at the Charlotte location") & 13:11–19 (worked at Charlotte location "Basically whenever they asked for help"; and worked "closer to 10" shifts at Charlotte location); see also State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers (Beckles Decl. Exs. 7 (Barbone); 17 (Clifford); 19 (Kavanaugh); 25 (Bean); 28 (Cavuoto) (listing "Pullman Associates, Inc." d/b/a "Mr. Dominic's at the Lake"); 32 (Connors) (same as Cavuoto)).

Finally, Tachin Decl. ¶ 32 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may . . . simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted). Tachin's declaration sets forth no facts showing that he is competent to testify as to the scheduling of servers, banquet staff and dishwashers at the two Mr. Dominic's restaurants—and indeed, contradicts his competence to testify as to the restaurants' day-to-day staffing (*see* Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which employees worked at any given time. *See, e.g.*, Beckles Decl. Ex. 1 (Tachin Dep.) 67:17–20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3–9 (duties as general manager).

Accordingly, because Paragraph 33 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 32–33.) EEOC's point is well-taken. Mr. Tachin already established

that others were responsible for the day-to-day management, and whether any

employee worked at the two restaurants "simultaneously," is a question he has not

established in the papers on this motion that he is qualified to answer.

34.    Patricia Warren, an upper-level Business Manager performing tasks for a number of companies that Mr. Tachin has an ownership interest in, did perform upper-level bookkeeping and some human resources tasks for both Pullman and Green Lantern. (Tachin Decl. ¶ 33).

Response: Plaintiff does not dispute this assertion solely for purposes of summary judgment. However, Plaintiff affirmatively asserts that, as her uncontradicted testimony and Mr. Dominic's business records show, Warren signed Mr. Dominic's correspondence with the New York State Department of Labor on Mr. Dominic's at the Lake letterhead (Beckles Decl. Ex. 30) and State-mandated Labor Law Notices on behalf of the employer (Beckles Decl. Exs. 17, 19, 21, 25 & 28), compiled, amended and maintained Green Lantern and Pullman Associates' common employment manual (Pl. 56(a) ¶¶ 37, 75), and, with the exception of Tachin's investigation of Clifford's sexual harassment complaint (*see* Pl. 56(a) ¶¶ 64-66, 68-73) performed nearly all traditional human resources tasks alleged in this case. See Pl. 56(a) ¶¶ 36, 41.

35.    For example, Ms. Warren prepared profit and loss and balance sheets for both defendants for purposes of providing those documents to defendants' accountants for tax purposes. (Tachin Decl. ¶ 33).

Response: Plaintiff does not dispute this assertion solely for purposes of summary judgment. However, Plaintiff affirmatively asserts that, as her uncontradicted testimony and Mr. Dominic's business records show, Warren signed Mr. Dominic's correspondence with the New York State Department of Labor on Mr. Dominic's at the Lake letterhead (Beckles Decl. Ex. 30) and State-mandated Labor Law Notices on behalf of the employer (Beckles Decl. Exs. 17, 19, 21, 25 & 28), compiled, amended and maintained Green Lantern and Pullman Associates' common employment manual (Pl. 56(a) ¶¶ 37, 75), and, with the exception of Tachin's investigation of Clifford's sexual harassment complaint (see Pl. 56(a) ¶¶ 64–66, 68–73) performed nearly all traditional human resources tasks alleged in this case. *See* Pl. 56(a) ¶¶ 36, 41.

36.    Other than John Tachin and Patricia Warren, no other employees were hired to perform work for both entities. (Tachin Decl. ¶ 34).

Response: Plaintiff objects that the cited paragraph of the Tachin Declaration does not present genuine issues of material fact because it

consists only of "[v]ague assertions supported only by self-serving statements," and so does not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c); *see also Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015). Plaintiff further objects that this assertion consists of a legal conclusion and as contradicted by specific evidence in the record, including Tachin's prior deposition testimony. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 114:12–16 (Dowlatt worked one evening at Mr. Dominic's on the Lake during suspension period) & Beckles Decl. Ex. 22 (during corresponding time period, Dowlatt was paid for seven hours of work by "DBDT: Mr. Dominic's on Main"); Beckles Decl. Ex. 30 (letter on Mr. Dominic's on the Lake letterhead, representing to the New York State Department of Labor that Cavuoto was employed at "our other location" and was "transferred to the Lake location."); Beckles Decl. Ex. 13 (Warren Dep.) 147:11–14 (regarding Cavuoto, "She was a server at Mr. Dominic's on Main. She was pregnant and couldn't do the stairs anymore, so they asked the manager here if she could come here [Mr. Dominic's on the Lake] and work, and she did."); Beckles Decl. Ex. 29 (payroll records recording Cavuoto as an employee of Mr. Dominic's at the Lake both before and after her transfer); Beckles Decl. Ex. 15 (Bardanis Dep.) 7:14–19 (training at other location); Beckles Decl. Ex. 31 (Connors Dep.) 8:9–11 (worked "here and there at the Charlotte location") & 13:11–19 (worked at Charlotte location "Basically whenever they asked for help"; and worked "closer to 10" shifts at Charlotte location); see also State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers (Beckles Decl. Exs. 7 (Barbone); 17 (Clifford); 19 (Kavanaugh); 25 (Bean); 28 (Cavuoto) (listing "Pullman Associates, Inc." d/b/a "Mr. Dominic's at the Lake"); 32 (Connors) (same as Cavuoto)).

Finally, Tachin Decl. ¶ 34 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may . . . simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted). Tachin's declaration sets forth no facts showing that he is competent to testify as to the scheduling of servers, banquet staff and dishwashers at the two Mr. Dominic's restaurants— and indeed, contradicts his competence to testify as to the restaurants' day-to-day staffing (*see* Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which

65

employees worked at any given time. See, e.g., Beckles Decl. Ex. 1 (Tachin Dep.) 67:17–20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3-9 (duties as general manager).

Accordingly, because Paragraph 36 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶¶ 34–36.) As discussed above regarding Mr. Tachin's assertion in paragraph 33, he is not competent to respond to questions of the day-to-day operations of the restaurants, such as who may have worked at both. Also as stated above, evidence is present showing that employees worked at both restaurants.

37.     There were a few employees who stopped working at Green Lantern and then went to work for Pullman, but they were never employed to work at both restaurants at the same time. (Tachin Decl. ¶ 34).

Response: Plaintiff objects that the cited paragraph of the Tachin Declaration does not present genuine issues of material fact because it consists only of "[v]ague assertions supported only by self-serving statements" and so does not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c); *see also Rodriguez v. Allstate Indem. Co.*, No. 12 Civ. 340S, 2015 WL 3823730, at *2 (W.D.N.Y. June 19, 2015). Plaintiff further objects that this assertion consists of a legal conclusion and as contradicted by specific evidence in the record, including Tachin's prior deposition testimony. *See* Beckles Decl. Ex. 1 (Tachin Dep.) 114:12–16 (Dowlatt worked one evening at Mr. Dominic's on the Lake during suspension period) & Beckles Decl. Ex. 22 (during corresponding time period, Dowlatt was paid for seven hours of work by "DBDT: Mr. Dominic's on Main"); Beckles Decl. Ex. 30 (letter on Mr. Dominic's on the Lake letterhead, representing to the New York State Department of Labor that Cavuoto was employed at "our other location" and was "transferred to the Lake location."); Beckles Decl. Ex. 13 (Warren Dep.) 147:11–14 (regarding Cavuoto, "She was a server at Mr. Dominic's on Main. She was pregnant and couldn't do the stairs anymore, so they asked the manager here if she could come here [Mr. Dominic's on the Lake] and work, and she did."); Beckles Decl. Ex. 29 (payroll records recording Cavuoto as an employee of Mr. Dominic's at the Lake both before and after her transfer); Beckles Decl. Ex. 15 (Bardanis Dep.) 7:14–19 (training at other location); Beckles Decl. Ex. 31 (Connors Dep.) 8:9–11 (worked "here and there at the Charlotte

location") & 13:11–19 (worked at Charlotte location "Basically whenever they asked for help"; and worked "closer to 10" shifts at Charlotte location); see also State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers (Beckles Decl. Exs. 7 (Barbone); 17 (Clifford); 19 (Kavanaugh); 25 (Bean); 28 (Cavuoto) (listing "Pullman Associates, Inc." d/b/a "Mr. Dominic's at the Lake"); 32 (Connors) (same as Cavuoto)).

Finally, Tachin Decl. ¶ 34 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may . . . simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted). Tachin's declaration sets forth no facts showing that he is competent to testify as to the scheduling of servers, banquet staff and dishwashers at the two Mr. Dominic's restaurants— and indeed, contradicts his competence to testify as to the restaurants' day-to-day staffing (*see* Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which employees worked at any given time. *See*, *e.g.*, Beckles Decl. Ex. 1 (Tachin Dep.) 67:17–20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3–9 (duties as general manager).

Accordingly, because Paragraph 37 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 37.) As with the assertions in paragraphs 33 and 36, Mr. Tachin is

not competent to testify on the day-to-day operations of the two restaurants.

### *The Complainants Only Worked for Green Lantern*

Response: Plaintiff objects to this assertion on the grounds that it consists of Defendants' arguments and legal conclusions, and is not supported by citation to any record evidence in violation of Local Rule 56(a)(2) and Fed. R. Civ. P. 56(c).

(EEOC Resp. at 23.) This heading is not taken by the Court as an assertion of fact as

it lacks any citation to admissible evidence.

38.    The complainants in this action, Rachel Clifford, Alissa Bean, and Lisa Ritchie worked for Green Lantern at the Fairport restaurant at various times between July 2017 and June 2018. (Tachin Decl. ¶¶ 35, 45, Ex. E).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

39.    None of the complainants ever worked for Pullman at the Charlotte restaurant. (Tachin Decl. ¶ 36).

Response: Plaintiff objects to this immaterial assertion on the grounds that it is contradicted, without explanation, by specific evidence in the record representing Pullman Associates, Inc., and Green Lantern Inn, Inc., together, or simply "Pullman Associates," as Clifford and Bean's employers on mandatory state notices and federal tax documents. *See* State-mandated Labor Law Notices listing both "Pullman Associates, Inc." and "Green Lantern Inn, Inc." as employers (Beckles Decl. Exs. 17 (Clifford); 19, 25 (Bean); *see also* Beckles Decl. Exs. 18 (payroll register, listing "Mr. Dominic's at the Lake" as Clifford's employer) & 27 (2017 IRS Form W-2, listing "Pullman Associates LLC" as Bean's employer).

Moreover, Tachin Decl. ¶ 36 may be disregarded because Tachin is not competent to testify as to the matters discussed. A Rule 56 declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated[]" (Fed. R. Civ. P. 56(c)(4); *see also Baillie Lumber Co., L.P. v. Ace Am. Ins. Co.*, No. 11 Civ. 995A, 2014 WL 6997524, at *6 (W.D.N.Y. Dec. 10, 2014) (same)) and "a court may . . . simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." 2014 WL 6997524 at *6 (quotation omitted). Tachin's declaration sets forth no facts showing that he is competent to testify as to the scheduling of servers, banquet staff and dishwashers at the two Mr. Dominic's restaurants—and indeed, contradicts his competence to testify as to the restaurants' day-to-day staffing (*see* Tachin Decl. ¶¶ 19, 23, 26 (duties of hired general managers)), and his deposition similarly undermines his competence to testify as to which employees worked at any given time. *See*, *e.g.*, Beckles Decl. Ex. 1 (Tachin Dep.) 67:17–20 (Barbone typically handled employee issues himself); Ex. 6 (Barbone Dep.) 23:3–9 (duties as general manager).

Accordingly, because Paragraph 39 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. See Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶ 39.) As with the paragraphs discussed above, Mr. Tachin is not competent to testify as to the day-to-day operations of the restaurants and whether any employees worked for both.

### Separate Payroll Records

Response: Plaintiff objects to this assertion on the grounds that it is not supported by citation to any record evidence in violation of Local Rule 56(a)(2) and Fed. R. Civ. P. 56(c).

(EEOC Resp. at 24.) This heading is not taken by the Court to be an assertion of fact since it lacks any citation to admissible evidence.

40.    At all times, the defendants each ran their payroll separately using the services of a third-party company, USA Payroll. (Tachin Decl. ¶ 37).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

41.    Defendants each provided separate payroll information to USA Payroll with the hours worked by each employee for each defendant. (Tachin Decl. ¶ 38).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

42.    USA Payroll provided separate reports to Pullman and Green Lantern listing the payroll for each entity. (Tachin Decl. ¶¶ 39–41, Ex. C and D).

 Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

43.    After receiving the payroll reports from USA Payroll, Pullman and Green Lantern each paid the payroll costs out of their operating accounts. (Tachin Decl. ¶ 43).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment, but affirmatively asserts that Patricia Warren testified that Mr. Dominic's at the Lake loaned Mr. Dominic's on Main money to cover payroll expenses (Beckles Decl. Ex. 13; Warren Dep. 159:25–161:2); that, in 2018, Mr. Dominic's on Main loaned

Pullman Associates $154,692 (*id.* 164:9–18); and, in the same statement, Mr. Dominic's on the Lake received $16,000 from Mr. Dominic's on Main to cover payroll costs (*id.* at 165:3–15).

44.    Pullman and Green Lantern maintained separate checking accounts for this purpose with First Niagara Bank. (Tachin Decl. ¶ 44).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

45.    The checking accounts were funded separately by each entity. (Tachin Decl. ¶¶ 44–45, Ex. E).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment, but affirmatively asserts that Patricia Warren testified that Mr. Dominic's at the Lake loaned Mr. Dominic's on Main money to cover payroll expenses (Beckles Decl. Ex. 13; Warren Dep. 159:25–161:2); that, in 2018, Mr. Dominic's on Main loaned Pullman Associates $154,692 (*id.* at 164:9–18); and, in the same statement, Mr. Dominic's on the Lake received $16,000 from Mr. Dominic's on Main to cover payroll costs (*id.* at 165:3–15).

46.    USA Payroll maintained separate accounts for Pullman and Green Lantern, and provided separate information as to the total payroll for each company for accounting and tax purposes. (Tachin Decl. ¶ 46).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

(EEOC Resp. ¶¶ 40–46.) The undersigned will consider these unopposed assertions for the purposes of summary judgment.

### *Separate Tax Returns and Financial Records*

Response: Plaintiff objects to this assertion on the grounds that it is not supported by citation to any record evidence in violation of Local Rule 56(a)(2) and Fed. R. Civ. P. 56(c).

(EEOC Resp. at 26.) The Court does not consider this heading to be an assertion of fact because it lacks any citation to admissible evidence.

47.    Pullman and Green Lantern have always maintained separate bank accounts, separate books, separate financial statements, and make separate tax payments. (Tachin Decl. ¶ 47).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment, but affirmatively asserts that Patricia Warren testified that Mr. Dominic's at the Lake loaned Mr. Dominic's on Main money to cover payroll expenses (Beckles Decl. Ex. 13; Warren Dep. 159:25–161:2); that, in 2018, Mr. Dominic's on Main loaned Pullman Associates $154,692 (*id.* 164:9–18); and, in the same statement, Mr. Dominic's on the Lake received $16,000 from Mr. Dominic's on Main to cover payroll costs (*id.* 165:3–15).

48.    Pullman and Green Lantern have at all times submitted separate income tax returns. (Tachin Decl. ¶ 48, Ex. F and G).

Response: Plaintiff does not dispute this assertion solely for purposes of summary judgment.

49.    Pullman and Green Lantern have at all times prepared and maintained separate financial statements. (Tachin Decl. ¶ 49, Ex. H and I).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

50.    Pullman and Green Lantern have at all times submitted separate sales tax payments through separate sales tax accounts. (Tachin Decl. ¶ 50, Ex. J and K).

Response: Plaintiff does not dispute this immaterial assertion solely for purposes of summary judgment.

51.    Since Pullman and Green Lantern were operated separately both in terms of daily operation and financial management, they always operated as separate employers. (Tachin Decl. ¶ 51).

Response: Plaintiff objects that this assertion violates Local Rule 56(a)(2) and Fed. R. Civ. P. 56(c) because it consists of a legal conclusion as to the ultimate issue of Defendants' Motion for Partial Summary Judgment, not a statement of material fact "as to which it is contended there exist a genuine issue to be tried." *Id.* Accordingly, no admission or denial is required, and, because Paragraph 51 is not supported by evidence that can establish the presence or absence of a material fact, this paragraph should be disregarded. *See* Fed. R. Civ. P. 56(c)(2) & Fed. R. Civ. P. 56(e).

(EEOC Resp. ¶¶ 47–51.) The Court will consider the assertions in paragraphs 47–50; the assertion in paragraph 51 is a legal conclusion, not a statement of fact.

## STANDARD OF LAW

Under Fed. R. Civ. P. 56(a), summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact." "The moving party bears the burden of showing the absence of a genuine dispute as to any material fact." *Crawford v. Franklin Credit Mgmt. Corp.*,758 F.3d 473, 486 (2d Cir. 2014). Once the moving party meets this burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). The nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). In sum, courts should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'").

In this case, EEOC moves for partial summary judgment. (Not. of Mot., ECF No. 91.) Partial summary judgment "functions as 'a pretrial adjudication that certain issues shall be deemed established for the trial of the case,' which 'serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.'" *Sicom S.P.A. v. TRS, Inc.*, 168 F. Supp. 3d 698, 705 (S.D.N.Y.

2016) (quoting Fed. R. Civ. P. advisory committee's note to 1946 amendment). "[A] court may grant partial summary judgment with respect to liability on a claim . . . thereby establishing liability ahead of trial." *Id.*

## DISCUSSION

The *Cook* factors direct the undersigned to consider the following to determine if Pullman Associates and Green Lantern Inn are a single employer for purposes of Title VII. Those factors are: "(1) [i]nterrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Cook*, 69 F.3d at 1240. "To demonstrate single employer status, not every fact need be present, and no factor is controlling." *Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996). However, courts note that "the second factor, centralized control of labor relations, is the central concern of the inquiry." *Cook*, 69 F.3d at 1240. "Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact." *Daikin Am., Inc.*, 756 F.3d at 226. Finally, while a single employer should be found only under "extraordinary circumstances," *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996), where, as here, "the facts critical [to] the determination are undisputed" and manifestly favor EEOC on every *Cook* factor, partial summary judgment is appropriate. *Niland v. Buffalo Laborers Welfare Fund*, No. 04-CV-0187F, 2007 WL 3047099, at *6 (W.D.N.Y. Oct. 18, 2007).[8]

---

[8] A line of cases indicating that the single employer doctrine "has been confined to parent-subsidiary and subcontractor relationships is distinguishable. *Popat v. Levy*, 328 F. Supp. 3d 106, 118 (W.D.N.Y. 2018) (quoting *Gulino v. New York State Educ. Dept.*, 460 F.3d 361, 378 (2d Cir. 2006)). First, EEOC has met the applicable test stated in *Cook*. *See Arculeo*, 425 F.3d at 198 (noting that a single employer may exist where there is "common ownership

The undisputed facts demonstrate that the central factor—control of labor relations—must be decided in EEOC's favor given Mr. Tachin's and Ms. Warren's "sufficient and necessary" involvement "in the total employment process." *Cook*, 69 F.3d at 1241. Mr. Tachin, as the owner and president of Green Lantern Inn and Pullman Associates was "the final decision-maker with regard to the employment issue underlying the litigation." *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 285 (E.D.N.Y. 2013) (considering claims under the Fair Labor Standards Act); *see also Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 250 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007) (quoting *Regan v. In the Heat of the Nite, Inc.*, 93 Civ. 862, 1995 WL 413249, at *3 (S.D.N.Y. July 12, 1995)) ("This particular criterion has been distilled down to a critical question: what entity made the final decision regarding employment matters related to the person claiming discrimination?")

After investigating and interviewing the relevant parties himself, Mr. Tachin decided not to permanently remove Mr. Dowlatt, resolving the underlying employment issue. (EEOC SOF ¶¶ 66, 70, 73.) He made himself the final decision-maker for any future instances of harassment, telling the complainant to bring any future allegations to him. (*Id.* ¶ 73.) Mr. Tachin's actions, as the president and owner[9]

and management," even in the absence of a parent-subsidiary relationship). Second, these cases are distinguishable because they declined to extend the single employer doctrine only to "cases involving the complex relations between levels of government," *Gulino*, 460 F.3d at 378, which is not involved here.

[9] The undersigned uses this term colloquially, recognizing that Green Lantern, Inc. and since June 2017, Mr. Tachin has been the sole officer, director and shareholder of that corporation. Further, the undersigned recognizes that Pullman Associates, LLC is a New York limited liability company, formed in 2011 and that Mr. Tachin has been the sole member of Pullman.

of both Green Lantern Inn and Pullman Associates, (*id.* ¶¶ 3, 9), would absolutely "justify the belief on the part of [the] aggrieved employee that the affiliated corporation [was] jointly responsible for the acts of the immediate employer." *Herman v. Blockbuster Entm't Grp.*, 18 F. Supp. 2d 304, 308 (S.D.N.Y. 1998).

Responding to Defendants' argument that the relevant analysis for determining control of labor relations is whether Pullman Associates had "actual day-to-day control" of Green Lantern Inn, *Woodell v. United Way of Duchess Cty.*, 357 F. Supp. 2d 761, 769 (S.D.N.Y. 2005), provides the undersigned with the opportunity to address the common management factor. The undisputed facts demonstrate that Mr. Tachin and Ms. Warren, as common managers, together had "sufficient and necessary" day-to-day control of labor relations. *Cook*, 69 F.3d at 1241. In addition to the reasons stated above, Mr. Tachin stated he oversaw both Pullman Associates and Green Lantern Inn. (EEOC SOF ¶ 28.) As one employee testified, Mr. Tachin was "the person that everyone answered to." (*Id.* ¶ 29.) Finally, Mr. Tachin hired and supervised Green Lantern Inn's general manager. (*Id.* ¶ 43.) No rational jury could conclude that Pullman Associates and Green Lantern Inn "maintain[ed] separate human resources departments," *Benzinger*, 447 F. Supp. 3d at 134, when Ms. Warren, as office manager for both companies, conducted their onboarding, payroll, and maintenance of employee files. (EEOC SOF ¶¶ 30–32, 34, 36–37, 41.) For the reasons discussed, EEOC prevails on both factors—even assuming that the analysis should be day-to-day control of labor relations.

Interrelation of operations is apparent. Emblematic of Pullman Associates and Green Lantern Inn's interrelation are each business' references to the other. Ms. Warren wrote a letter on the letterhead of Pullman Associates concerning an employee of Green Lantern Inn, referring to Green Lantern Inn as "our other location." (*Id.* ¶ 60.) Pullman Associates and Green Lantern Inn shared an employee manual, which stated that it "applie[d] to all employees of" the two restaurants. (*Id.* ¶ 77.) The manual indicated it was shared between the two in a footnote on each page. (*Id.* ¶ 76.) Multiple employees were listed as both employees of Pullman Associates and Green Lantern Inn, including, Ms. Clifford, Ms. Kavanagh, Ms. Bean, Ms. Casciola (neé Cavuoto), and Ms. Connors. (*Id.* ¶¶ 46–47, 54, 56, 61.) Further, many of these employees would alternate between the two restaurants for various reasons.[10] (*Id.* ¶¶ 45–53, 58, 62, 69.) Finally, Pullman Associates and Green Lantern Inn had additional commonalities: the same tax accountant, the same payroll provider, the same bookkeeping software, and, significantly, the same website. (*Id.* ¶¶ 37, 39, 41, 87–88.)

Finally, the parties do not seriously dispute the final factor: common ownership. Defendants conceded at oral argument that the undersigned should find for EEOC on this factor.

Courts have found "extraordinary circumstances" like those present here that supported a single employer finding. *See, e.g., Ayala v. Your Favorite Auto Repair &*

---

[10] The same is true of Ms. Warren: she split her time between Pullman Associates and Green Lantern Inn. (EEOC SOF ¶ 32.)

*Diagnostic Ctr., Inc.*, No. 14CV5269ARRJO, 2016 WL 5092588, at *17 (E.D.N.Y. Sept. 19, 2016) (holding, after a bench trial, two companies to be a "single integrated enterprise" in the Fair Labor Standards Act context[11] and noting employee sharing, a common bookkeeper, and a common owner); *Finkel v. Frattarelli Bros.*, No. 05-CV-1551 JFB AKT, 2008 WL 2483291, at *10 (E.D.N.Y. June 17, 2008) (finding, in the collective bargaining context, a single employer where the two companies shared "the same business purpose" and one company was essentially a "shell" for the other). Given the undersigned's findings concerning the *Cook* factors, the appropriate conclusion is that EEOC's motion for partial summary judgment should be granted: it is "difficult to tell where the business of" Pullman Associates ceases "and the business of" Green Lantern begins. *Ayala*, 2016 WL 5092588, at *17.

## CONCLUSION

For the reasons stated above, the undersigned reports and recommends that the Honorable Frank P. Geraci grant EEOC's motion for partial summary judgment (ECF No. 91–1).

Pursuant to 28 U.S.C. § 636(b)(1), the Court hereby

ORDERS, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within 14 days after receipt of a copy of this Report and

---

[11] The Court in *Ayala* noted that it was applying the "integrated enterprise test" which has the same four factors stated in *Cook*. *See* 2016 WL 5092588, at *16 ("The 'single enterprise' doctrine allows for multiple defendants to be jointly and severally liable for any FLSA and NYLL violations.").

Recommendation in accordance with the above statute and Fed. R. Civ. P. 72(b), 6(a), 6(e), and Local Rule 72.

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Local Rule 72(b), "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." Failure to comply with the provisions of Local Rule 72(b), or with the similar provisions of Local Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.

**SO ORDERED**

MARK. W. PEDERSEN
United States Magistrate Judge

Dated:    March 8, 2022
          Rochester, New York

78